465 S.E.2d 224

Betty Jo SUMMERS, nka Betty Jo Kidd, Plaintiff Below, Appellant,

v.

Samuel David SUMMERS, Jr., Defendant Below, Appellee.

No. 22862.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 27, 1995.

Decided Nov. 9, 1995.

---

Ronald Wm. Kasserman, Seibert, Kasserman, Farnsworth, Gillenwater, Glauser, Richardson & Curtis, Wheeling, for Appellant.

William J. Leon, Gianola, Leon & Barnum, Morgantown, for Appellee.

PER CURIAM:

This divorce case involving matters of equitable distribution is before this Court again following our decision in *Summers v. Summers*, 186 W.Va. 635, 413 S.E.2d 692 (1991), to remand to the circuit court for a determination of the enforceability of an oral post-decree settlement agreement. By order entered December 14, 1993, the Circuit Court of Taylor County found the agreement was not obtained by "fraud or duress," but was unenforceable because its terms were "patently unfair." The circuit court ordered Samuel David Summers, Jr., the defendant

below and appellee herein, to pay $71,113.68 over the next four years to Betty Jo Summers, now known as Betty Jo Kidd, the plaintiff below and appellant herein, to finalize an equitable division of the marital assets. The plaintiff asserts the circuit court erred by: (1) failing to order a sale of the marital property; (2) failing to award post-judgment interest; (3) failing to award her attorney's fees; and (4) not specifically finding the defendant's conduct constituted fraud. In addition to responding to the plaintiff's assignments of error, the defendant raises two cross-assignments of error, alleging the circuit court erred by: (1) finding the post-decree settlement agreement was not fair; and (2) awarding the plaintiff $71,113.68 to equalize the distribution of assets.

## I.

### FACTS

The parties were married in 1967. They raised seven children during the marriage, all of whom have now reached the age of majority—the defendant's three sons from a previous marriage and the parties' four children. The parties operated a family timber and saw mill operation on their approximately 400–acre farm in Taylor County. In 1980, an appraisal was made on the farm which indicated a value of $210,000. The defendant, provided expertise and labor for the family business, while the plaintiff provided bookkeeping services in addition to her homemaker services.

In June of 1987, a hearing was conducted before the family law master for this divorce proceeding. The family law master recommended the disposition of various personal property and recommended the sale of many of the marital assets, including the family farm, with the proceeds to be evenly divided after the cost of the sale and indebtedness. The family law master also recommended that the plaintiff receive $200 per month alimony for five years unless she remarried.

On November 13, 1987, the circuit court granted the divorce and adopted the findings of the family law master.

Numerous procedural events concerning the terms of the order took place following its entry. The events are set out in our previous opinion. See Summers, 186 W.Va. at 637–38, 413 S.E.2d at 694–95. In March of 1989, the parties entered into the post-decree settlement agreement which was at issue in our earlier decision. As per the terms of the settlement agreement, the plaintiff accepted $30,000 in exchange for her rights in the remainder of the marital property. The plaintiff also received approximately $10,000 from a whole life insurance policy and approximately $3,000 from the sale of other marital property.

Following our remand of this case, a hearing was held before the family law master on March 22, 1993. The family law master heard evidence regarding the enforceability of this unsigned property settlement agreement.[1]

At this hearing, the defendant submitted evidence on the issue of the value of the farm in an attempt to demonstrate the agreement was fair. A real estate appraiser, Jerry M. Gavitt, testified that the location of the sawmill would have a negative impact on the sale of the farm. Mr. Gavitt testified that the fair market value of the farm in 1988 was $176,000. He further testified that taking all things into consideration a forced sale of the farm in 1988 would have brought only $110,000.

The family law master was not persuaded by the plaintiff's argument that she entered into the agreement because of fraud and duress. However, he did find the agreement was unfair and therefore not enforceable. The family law master found:

"The 'agreement' is patently unfair. To suggest, as defendant does, that a settle-

---

1. In Syllabus Point 3 of *Summers, supra,* we stated:

"A post-decree settlement agreement, whether written or oral, must be presented to the family law master and circuit court just as a pre-decree agreement must be submitted for

approval pursuant to W.Va.Code, § 48–2–16(a) (1986) to permit the court to make the necessary inquiries to determine that the agreement is fair and reasonable and that it was not procured through fraud, duress, or other unconscionable conduct."

ment of sum $47,530.39 [*sic* ][2] on a marital estate valued at $228,088.14 is fair is ridiculous. While there was an agreement it is hard to imagine that this was to be a total agreement.

"Because of its unfairness the 'agreement' is unconscionable."

In arriving at the figure of $228,088.14, as the sum of the marital estate, the personal property was valued at approximately $137,000. The family law master relied upon the appraisal of the farm submitted by the plaintiff at the earlier hearing. He stated:

"In finding XVI of the original findings of fact the real property was valued at $200,000.00. Since then this value has become somewhat suspect but since neither party had it adequately appraised recent speculations as to what its then fair market value was are inappropriate to consider. For the purposes of this distribution the vale [*sic* ] is $200,000.00."

Accordingly, the plaintiff was awarded $71,113.68, which is half the value of the marital estate minus the $42,930.39 she already received. On December 13, 1993, the circuit court adopted the findings and recommendations of the family law master. It is from this order that both parties appeal.

## II.

## DISCUSSION

### A. *Standard of Review*

■ We begin by noting that this Court accords deference to the circuit court in conducting a review of a final equitable distribution order. Syllabus Point 1 of *Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995), sets forth the standard of review this Court should employ when examining challenges to a decision of the circuit court which adopted the findings of the family law master:

"In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied.

Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review."

In the present case, the family law master relied upon the appraisal of the farm submitted by the plaintiff to arrive at his factual finding that the fair market value of the farm was $200,000. For reasons discussed below, we decline to reverse that finding. Furthermore, the circuit court determined a cash settlement was "the most appropriate method of equalization." Similarly, we do not find the circuit court erred in not forcing a sale of the farm in light of the peculiar facts of this case. The circuit court's recommended decision did not address the plaintiff's request for post-judgment interest. As we discuss in more detail below, we find the law clearly provides that the plaintiff should receive post-judgment interest. Accordingly, we find it necessary to remand this case for entry of an order awarding post-judgment interest. Finally, a review of the record demonstrates the circuit court did not abuse its discretion in failing to award the plaintiff her attorney's fees.[3]

### B. *Marital Property*

The first issue relating to the marital property is the value assigned to the farm in determining equitable distribution. The defendant asserts that in light of his evidence indicating the value of the farm at $110,000, the circuit court erred by finding the settlement agreement unfair and erred in awarding the plaintiff an additional $71,113.68 to equalize the distribution of assets. However, he concedes that had the marital estate been worth over $228,000, the settlement agreement would have been unfair.

■ When evaluating the fairness of the post-decree settlement agreement in this case, we need to focus on the information available to the parties at the time the contract was entered into. "The fairness of the

---

**2.** This figure appears to be a typographical error because the family law master found the plaintiff received $42,930.39.

**3.** We find the plaintiff's remaining assignments of error are without merit.

transaction in making an agreement should be determined by the condition of things at the time the agreement was made and executed, and not by what occurred afterward, except so far as subsequent developments may reflect light upon it." 17A Am.Jur.2d *Contracts* § 295 at 295 (1991). W.Va.Code, 48–2–32 (1984), states, in pertinent part:

"(b) In cases where the parties to an action commenced under the provisions of this article have executed a separation agreement, then the court shall divide the marital property in accordance with the terms of the agreement, unless the court finds:

\* \* \* \* \* \*

"(3) That the agreement, viewed in the context of the actual contributions of the respective parties to the net value of the marital property of the parties, is so inequitable as to defeat the purposes of this section, and such agreement was inequitable at the time the same was executed."

At the time the contract was made, the only value assigned to the farm was the family law master's finding that its fair market value was $200,000 based on the appraisal submitted by the plaintiff.[4] Therefore, when we examine the fairness of the agreement, it is of no consequence that the defendant put forth evidence at the March 22, 1993, hearing which indicated a substantially lower value on the farm.

Similarly, in determining the appropriateness of the equitable distribution award, our review as an appellate court is to determine whether the family law master was clearly erroneous in his factual finding that the farm was worth $200,000. The family law master had two pieces of evidence before him in determining the value of the farm; the appraisal submitted by the plaintiff and the testimony of Mr. Gavitt. He chose the former. In the absence of evidence showing this decision was clearly erroneous, we affirm the judgment.

■ The second issue relating to the marital property is the circuit court's decision to not force a sale of the farm. The plaintiff contends the circuit court should have ordered the sale of the farm so that she could obtain her fair portion of the marital property as quickly as possible. She requests we enforce the November 13, 1987, order of the circuit court forcing the sale of the home. However, she does not seek enforcement of the portion of that order awarding her half of the proceeds of the sale *after* payment of all debts and expenses. Essentially the plaintiff argues she is entitled to a forced sale of the property to receive approximately $70,000, without consideration of what the farm actually brings at sale.

The defendant argues the circuit court was correct in not forcing a sale of the property because he is self-employed in the timber and sawmill business and his sawmill is less than 100 yards from the marital home. He argues a forced sale of the property would destroy his livelihood.[5] We agree that based on the particular facts of this case the circuit court did not err in failing to force a sale of the property because the sawmill business is so intricately tied to the farm.

### C. *Post–Judgment Interest*

■ The plaintiff argues she should be granted post-judgment interest on the $71,113.68 judgment from December 14, 1993, the date of the circuit court order. We agree. In Syllabus Point 7 of *Bettinger v. Bettinger*, 183 W.Va. 528, 396 S.E.2d 709 (1990), this Court held:

"Where the value of an equitable distribution asset is payable over a term of

---

4. The defendant asserts that he did not submit evidence on the fair market value of the farm at the first hearing before the family law master because he believed the farm would be sold and the proceeds divided evenly. He did not put forth any evidence on the value of the farm until the March 22, 1993, hearing following the remand. This Court is aware the defendant's present attorney inherited a poorly developed record from which to argue for his client. The defendant's interests would clearly have been better protected had he submitted some evidence on the value of the farm at the hearing before the family law master on June 7, 1989. However, all this information was before the family law master at the subsequent hearing.

5. Furthermore, at the time of the divorce, the parties' children decided to live with the defendant on the farm. However, they have all reached the age of majority.

years, interest should be paid at the going rate in the absence of some special hardship factor shown by the obligor."

The defendant made no showing of any hardship factor justifying the excuse of interest payments. We find that post-judgment interest on the $71,113.68 judgment should be paid beginning from December 14, 1993, the date of the circuit court order. Accordingly, we remand this case to the circuit court for entry of an order awarding post-judgment interest.[6]

### D. *Attorney's Fees*

■ The plaintiff contends she is entitled to her attorney's fees incurred during this prolonged divorce litigation given the defendant's behavior below.[7] The plaintiff argues the defendant's actions throughout this proceeding have been unconscionable: he failed to make the ordered alimony payments; he threatened her into accepting the $30,000 settlement offer by telling her that if she did not accept the offer she would receive nothing; he allowed the cattle valued at over $10,000 to run off the property; he lied to the auctioneer about the extent of debt on the property to be auctioned; and he otherwise allowed the marital assets to deteriorate.[8] The plaintiff asserts the circuit court was clearly wrong when it found that both parties were at fault in delaying resolution of this matter.

The circuit court found: "The conduct of *both* of the parties throughout this litigation has lent to confusion, mistrust and error.... The conduct of both of the parties has contributed to the need for extensive legal fees and costs. They both should bear those costs by paying their own attorney fees." (Emphasis in original). The defendant argues the circuit court did not abuse its discretion in refusing to award the plaintiff attorney's fees, and therefore the judgment should stand.

We agree with the plaintiff that the circuit court's finding that she was also at fault for prolonging this action was not supported by the record. This Court can find no instances of misconduct attributable to the plaintiff that resulted in delaying the resolution of the divorce. Accordingly, we set aside this finding of fact as clearly erroneous. *Burnside, supra.*

■ Although the evidence of the defendant's misconduct is relevant, for reasons discussed below, the dispositive factor relating to the issue of whether to grant the plaintiff's attorney's fees is the financial situation of the parties. W.Va.Code, 48–2–13 (1993), provides the statutory authority for the award of attorney's fees in divorce actions. W.Va.Code, 48–2–13(a)(6)(A), states that "[t]he [circuit] court may compel either party to pay attorney's fees and court costs reasonably necessary ... to prosecute or defend the [divorce] action[.]"[9] In *Bettinger*

---

6. The defendant contends this issue is not properly before this Court because the family law master and the circuit court did not make any ruling on the issue of interest due on the judgment. The defendant also argues that because the plaintiff failed to raise the issue of post-judgment interest, she failed to preserve this error for appeal. However, we find that post-judgment interest should have been granted as a matter of law. Furthermore, our review of the record reveals the plaintiff did request interest on the judgment.

7. In the remand proceedings following this Court's previous opinion, the plaintiff presented the circuit court with an itemized statement of attorney's fees and costs at the rate of $100 per hour and paralegal fees at $50 per hour for a total of $16,588.79. The circuit court denied her request, and, therefore, did not determine the reasonableness of the attorney's fees incurred. *See Wood v. Wood*, 184 W.Va. 744, 403 S.E.2d 761 (1991).

8. The plaintiff requests we find the defendant's actions constitute fraud so that she may protect her interests should he file for bankruptcy. She contends: "Exceptions to discharge in bankruptcy are debts for money obtained by actual fraud or for wilful and malicious injury to the property of another." We agree with the defendant, however, that it is unnecessary for this Court to address the issue because the bankruptcy court would be the appropriate forum to litigate this question should the problem arise.

9. W.Va.Code, 48–2–13(a)(6)(A), states in its entirety:

"The court may compel either party to pay attorney's fees and court costs reasonably necessary to enable the other party to prosecute or defend the action in the trial court. The question of whether or not a party is entitled to temporary alimony is not decisive of that party's right to a reasonable allowance of attorney's fees and court costs. An order for tem-

*v. Bettinger, supra,* this Court held the statute calls for consideration of the financial resources of the parties. In Syllabus Point 14 of *Bettinger,* we stated:

"The purpose of W.Va.Code, 48–2–13(a)(4) (1986), [now 48–2–13(a)(6)(A) (1993) ] is to enable a spouse who does not have financial resources to obtain reimbursement for costs and attorney's fees [incurred] during the course of the litigation."

*In accord* Syl. Pt. 3, *Ball v. Wills,* 190 W.Va. 517, 438 S.E.2d 860 (1993).

Notwithstanding the defendant's less than admirable conduct below, our primary focus is on the financial situation of the parties. *See Langevin v. Langevin,* 187 W.Va. 585, 420 S.E.2d 576 (1992) (record must support finding that spouse does not have the financial resources to pay attorney's fees); *Smith v. Smith,* 187 W.Va. 645, 650, 420 S.E.2d 916, 921 (1992) ("[t]he touchstone of the [attorney's fee] award is that one spouse has a significantly higher income than the other"). Taking into account the final equitable distribution award, we cannot find the plaintiff is without financial resources with which to pay her attorney's fees. Under the terms of the order, she will receive a sizable cash settlement for her interest in the marital property along with our award of post-judgment interest. Accordingly, we do not find the circuit court abused its discretion in failing to award the plaintiff all her attorney's fees.

However, the plaintiff should recover the portion of her attorney's fees incurred in her attempts to seek enforcement of the circuit court's orders below. It would be unfair to force the plaintiff to pay for the fees resulting from her attempts to seek enforcement of the orders when the defendant had a clear legal duty to abide by those orders. Our review of the record shows at least two incidents in which the plaintiff had to incur legal expenses to force the defendant to abide by the then existing order from the circuit court—the hearing held regarding the alimony arrearage in February of 1988 and the subsequent proceedings in which the defendant was found to be in contempt. On remand, the plaintiff should provide the circuit court with an itemized statement of her attorney's fees resulting from the defendant's failure to follow the circuit court's order in these incidents and any others she can document. The circuit court should then determine the reasonableness of the fees and enter an award accordingly. *See Wood v. Wood,* 184 W.Va. 744, 403 S.E.2d 761 (1991).

### III.

### CONCLUSION

For the foregoing reasons, the judgment of the Circuit Court of Taylor County is affirmed and this case is remanded to the circuit court with directions to enter an order awarding post-judgment interest on the $71,113.68 award beginning from December 14, 1993, and to award the plaintiff reasonable attorney's fees she incurred in seeking enforcement of the circuit court's orders.

Affirmed; remanded with directions.

---

porary relief awarding attorney fees and court costs may be modified at any time during the pendency of the action, as the exigencies of the case or equity and justice may require, including, but not limited to, a modification which would require full or partial repayment of fees and costs by a party to the action to whom or on whose behalf payment of such fees and costs was previously ordered. If an appeal be taken or an intention to appeal be stated, the court may further order either party to pay attorney fees and costs on appeal."