674 S.E.2d 186

**A.E. LANDIS, Petitioner Below, Appellee**

v.

**Georganne Banning LANDIS, Respondent Below, Appellant.**

No. 33333.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 9, 2007.

Decided Nov. 8, 2007.

**326**

C. Elton Byron, Jr., Esq., Abrams & Byron, Beckley, for Appellee.

Lyne R. Ranson, Esq., Charleston, for Appellant.

PER CURIAM.

This case is before this Court on the appeal of a final decision by the Circuit Court of Raleigh County in denying appellant's request for attorneys' fees and costs in divorce proceedings.

## I.

The appellant is Georganne Banning Landis, and the appellee is A.E. Landis, M.D. Divorce proceedings between the parties began in Raleigh County in 1999. In 2002 the parties were divorced; it was not until 2005 that the parties had resolved by agreement all issues of child support and financial, property and business interest division. The appellant subsequently brought on for hearing a request for an award of attorney fees, expert fees, and costs. On April 24, 2006, the Family Court Judge of Raleigh County denied this request. This denial was sustained by the Circuit Court of Raleigh County in an order dated July 20, 2006, from which order the appellant appeals to this Court.

Both the family court and circuit court concluded that because the appellant is receiving (as noted, by agreement of the parties) both alimony and child support, and has been awarded a 50% share of the parties' substantial assets, the appellant should pay her own expert and attorney fees and costs. The orders of the family court and circuit court, however, do not address the reasons, given by the appellant that she contends support an award of attorney fees.

The appellant's fees, expenses, and costs are substantial. According to her uncontested submissions to this Court, the appellant has incurred $171,000.00 in attorney fees and $142,000.00 in expert witness fees. These large sums, the appellant states, resulted from the intransigence of the appellee in resisting the appellant's efforts to ascertain the value of the parties' marital assets. To quote from the appellant's brief:

Ms. Landis' divorce case took <u>over 7 years before a final agreement</u> on all issues could be reached; and the case is still not completed because Dr. Landis would not hold up his end of the agreement by paying Ms. Landis. Every issue of the divorce case was contested. Ms. Landis' attorneys made numerous requests for financial documents of the parties' businesses and accounts. In some instances it was more than 4 years before Ms. Landis could receive critical documentation from Dr. Landis and his agents to properly value the marital estate, such as providing supporting documentation showing the values of retirement accounts, life insurance policies, tax returns, bank records, income information and so forth. They did not produce such information in their financial statement, nor discovery requests. The parties owned many business interests, several homes in three states and numerous pieces of property which were separate with possible marital interest or appreciation to be determined. Furthermore, the parties were owners of numerous banking accounts, pension accounts, IRAs and other accounts of this nature. Dr. Landis had approximately 22 life insurance or disability policies, which had to be researched to determine their cash value or any value associated therein, whether the policy was transferred, removed or allowed to lapse. These accounts had to be traced to determine what happened to the accounts and the monies in said accounts.

Numerous subpoenas were issued in an attempt to receive documentation to support the values and debts in the equitable distribution worksheet since Dr. Landis did not provide such in a timely manner. Dr. Landis' disregard and non-responsive attitude for such requests caused Ms. Landis to incur more costs to obtain necessary documents. Ms. Landis incurred litigation costs for subpoena requests, subpoena service, document copying, research from 3rd parties and other necessary litigation costs totaling $14,962.16.

In some instances, Ms. Landis did not receive any updated documentation on the assets and debts to provide the information needed as the divorce continued for years. Therefore, Ms. Landis had to depose Dr. Landis and John Stroud [Dr. Landis' accountant] for the second time. The first time Dr. Landis was deposed, the attorney allowed John Stroud to appear with Dr. Landis and provide answers. The depositions of William Kinder, Lisa Stroud, Mark Collins and Mike Bass were taken in 2005 to obtain the information needed to finalize this matter. These depositions were held on August 2, 2005, August 3, 2005, August 31, 2005 and September 1, 2005. This matter was settled approximately 47 days from the date of Dr. Landis' second deposition held on September 1, 2005.

To this account by the appellant, the appellee's brief replies:

[A]lthough Dr. Landis timely provided all requested discovery to the prior attorneys and expert witness of Ms. Landis, he and his accountant were subsequently deposed on two occasions and the depositions disclosed nothing other than what Dr. Landis and his accountant, John Stroud, had previously urged and asserted in the case. As a matter of fact, on several occasions documents were made available for inspection and reproduction by the attorneys and/or experts for Ms. Landis at the office of John Stroud and, although appointments for the same had been made, neither the attorneys nor the experts appeared as scheduled.

As further evidence of the appellee's intransigence, the appellant says:

As of the date of filing this Petition, Dr. Landis has not paid Ms. Landis her equitable share of the parties' marital estate. Two contempt petitions have been filed regarding his non-payment of such. The initial payment was due in full to Ms. Landis in December, 2005 and Dr. Landis has failed to abide by the Final Order requiring him to do such. Ms. Landis filed a Petition for Contempt for his non-payment of such and a hearing was held on June 6, 2006 where Dr. Landis was Ordered to pay Ms. Landis one-half of the amount owed to her within 30 days from the June 6, 2006 hearing date and for him to pay the remaining funds within 30 days from the date 3 Curlew, Nantucket, Massachusetts property and 318 Perry Cabin Drive, St. Michaels, Maryland properties were refinanced. The Court Ordered Ms. Landis to refinance in her name certain properties she received, specifically, 318 Perry Cabin Dr., St. Michaels, Maryland and 3 Curlew Court, Nantucket, Massachusetts. On June 27, 2006 Ms. Landis refinanced 318 Perry Cabin Drive, St. Michaels, Maryland and on July 28, 2006, she refinanced 3 Curlew Court, Nantucket, Massachusetts. Dr. Landis failed to pay Ms. Landis any of monies due and owing to her. A second Petition for Contempt was filed and a hearing was held on October 16, 2006 wherein the Court Ordered that Dr. Landis must pay such amount in full by December 15, 2006. This is just one example of Dr. Landis' non-compliance with the Family Court's Orders and the reason that this matter has gone on for seven (7 1/2) years.

To these allegations by the appellant, the appellee responds:

A. Dr. Landis has *partially* paid to Ms. Landis her equitable share of the parties marital estate. [emphasis added]

B. Ms. Landis has been subject to a contempt petition for her failure to cooperate in the division of the parties' marital assets[.]

The orders of the circuit court and family court are silent on the merits of the parties' competing assertions.

## II.

■ Decisions regarding awards of attorney and expert fees in a divorce case are reviewed under an abuse of discretion standard:

> In divorce actions, an award of attorney's fees rests initially within the sound discretion of the family law master and should not be disturbed on appeal absent an abuse of discretion. In determining whether to award attorney's fees, the family law master should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request.

Syllabus Point 4, *Banker v. Banker,* 196 W.Va. 535, 474 S.E.2d 465 (1996). However, the court's discretion must be exercised pursuant to the correct substantive legal standards:

> In reviewing for an abuse of discretion, we must consider whether a family law master failed to consider a relevant factor, whether he or she relied on an improper factor, and whether the basis given reasonably supports the conclusion. See Maurice Rosenberg, Judicial Discretion of the Trial Court: Viewed from Above, 22 Syracuse L.Rev. 635 (1971). Similarly, a family law master commits an abuse of discretion if the correct legal standard is misapplied or if the underlying substantive law is misapprehended. If the exercise of discretion was in error, this Court will hold the family law master abused his or her discretion.

*Burnside v. Burnside,* 194 W.Va. 263, 265 n. 2, 460 S.E.2d 264, 266 n. 2 (1995).

As previously noted, the decisions by the circuit court and family law judge in the instant case to deny the appellant's request for a fee award were premised solely on the ability of the appellant to pay her attorneys' fees and costs.

■ However, this Court has repeatedly held that the court's discretion in considering a fee award must be exercised after considering a wide range of relevant factors, including but not limited to a party's ability to pay—and, of course, the relative abilities of the parties to pay attorney fees. *Banker, supra, Rogers v. Rogers,* 197 W.Va. 365, 374, 475 S.E.2d 457, 466 (1996). We have also recognized that delay caused by a party, and the intransigence of a party in connection with divorce proceedings, may be properly considered as relevant factors in awarding attorney fees, *cf. Chafin v. Chafin,* 202 W.Va. 616, 630, 505 S.E.2d 679, 693 (1998); *Summers v. Summers,* 195 W.Va. 224, 230, 465 S.E.2d 224, 230 (1995).

In the instant case, we conclude that the lower courts erred when they did not address the appellant's assertion that as compared to the appellee, she is relatively less able to afford to pay her fees; and when those courts did not address the issue of the appellee's intransigence during the litigation process, including his refusal to pay court-ordered equitable distribution awards.

Rather than remand this already-too-long-delayed proceeding for further consideration under the proper legal standards, and in the absence of pertinent findings by the lower courts, this Court has reviewed the record, and concluded that the appellant's assertions on these issues have a substantial degree of merit. That is, the cost of the litigation to the appellant was aggravated by the appellee's intransigence; and the appellee, who continues to have substantial income from his work, is in a better financial position to absorb the cost of attorney and expert fees that the appellant has incurred (although the appellant is admittedly not entirely without resources herself).

## III.

■ We conclude, therefore, that the appellee should be responsible for one-half of all of the appellant's attorney and expert fees and costs (including one-half of the appellant's fees and costs in prosecuting the instant appeal). We reverse the circuit court's April 24, 2006 order, and remand this case for further proceedings consistent with this opinion. The Family Court of Raleigh County is instructed to see that payment of all

sums owed by the appellee is made within ninety days of the date of the issuance of this opinion.

It is further directed that the Clerk of this Court forthwith issue the mandate in this case.

Reversed and Remanded.