403 S.E.2d 29

**Martha Young BROWN**

v.

**Jo Baily BROWN.**

**No. 19766.**

Supreme Court of Appeals of
West Virginia.

March 18, 1991.

Susan K. McLaughlin, McLaughlin and Curry, Fairmont, for Martha Young Brown, appellant.

Larry A. Winter, Trina L. Leone, Kimberley R. Fields, Spilman, Thomas, Battle & Klostermeyer, Charleston, for Jo Baily Brown, appellee.

PER CURIAM:

This case is before this Court upon the appeal of Martha Young Brown from an order of the Circuit Court of Monongalia County entered on May 25, 1990, which awarded custody of the parties' two children to the appellee, Jo Baily Brown, and denied the appellant's request for one-half of the appellee's pension. The appellant contends that the circuit court abused its discretion in awarding the appellee custody of the children, and also maintains that she is entitled to one-half of the appellee's pension. We find that the circuit court abused its discretion in awarding appellee custody of the children, and therefore, we reverse the circuit court solely on this issue. In all

other respects, the order of the circuit court is affirmed.

The parties were married on March 1, 1980. Two children were born as issue of the marriage, Emily, who is now age six, and Ben, who is now age four. Now and throughout the marriage, the appellee has been employed as a librarian at West Virginia University. The appellant was employed by the Dominion Post newspaper until October of 1987, at which time she ceased working to devote her time to her studies at the West Virginia University College of Law.

During the summer of 1989, while the appellant was living with her two children in Pittsburgh and working as a summer associate at Buchanan Ingersoll, the parties separated. On September 6, 1989, the appellant filed a complaint against the appellee seeking a divorce on the grounds of irreconcilable differences, and custody of the parties' two children. In his answer to the complaint, the appellee also alleged that irreconcilable differences had arisen between the parties, and sought custody of the children.

The appellant subsequently filed a motion for relief *pendente lite*. Upon hearing the sworn testimony of each of the parties, the family law master entered a temporary order on October 6, 1989, awarding the appellant custody of the two children. Following the final hearing on March 6, 1990, the family law master entered a recommended decision finding that the appellant was the primary caretaker, and awarding her custody of the parties' two children.

The appellee then petitioned the circuit court for a review of the family law master's recommended decision. By order dated May 25, 1990, the circuit court reversed that decision and found the appellee to be the primary caretaker of the parties' children. The circuit court also ruled that the appellant was not entitled to one-half of the appellee's pension. The appellant appealed that order. We issued a stay of the order of the circuit court pending a decision by this Court on appeal.

I

The first issue before us is whether the circuit court abused its discretion in awarding custody of the parties' two children to the appellee on the grounds that he was the primary caretaker of the children. The appellant asserts that the family law master, after presiding over two hearings, correctly determined that she was the primary caretaker of the children. The appellee contends that the circuit court was correct in finding that the family law master's determination that the appellant was the primary caretaker was unsupported by substantial evidence. Both parties claim to be the primary caretaker.

This Court has consistently recognized, in child custody disputes, that the welfare of the child can best be served by placing the child in the custody of the primary caretaker if he or she is fit, as we stated in syllabus point 2 of *David M. v. Margaret M.*, 182 W.Va. 57, 385 S.E.2d 912 (1989):

'With reference to the custody of very young children, the law presumes that it is in the best interest of such children to be placed in the custody of their primary caretaker, if he or she is fit.' Syllabus point 2, *Garska v. McCoy*, 167 W.Va. 59, 278 S.E.2d 357 (1981).

We defined the "primary caretaker" in syllabus point 3 of *David M. v. Margaret M., supra:*

The 'primary caretaker' is the parent who has taken primary responsibility for, *inter alia,* the performance of the following caring and nurturing duties of a parent: (1) preparing and planning of meals; (2) bathing, grooming and dressing; (3) purchasing, cleaning, and care of clothes; (4) medical care, including nursing and trips to physicians; (5) arranging for social interaction among peers after school, i.e. transporting to friends' houses or, for example, to girl or boy scout meetings; (6) arranging alternative care, i.e. babysitting, day-care, etc.; (7) putting child to bed at night, attending to child in the middle of the night, waking child in the morning; (8) disciplining, i.e. teaching general manners and toilet training; (9) educating, i.e. religious, cultural, so-

cial, etc.; and, (10) teaching elementary skills, i.e. reading, writing and arithmetic.

In the two separate hearings before the family law master, only the appellant and appellee testified.[1] The appellant testified that, when her daughter Emily was born, she took a six-month leave of absence from her employment at the Dominion Post newspaper to stay at home and care for Emily. The parties then agreed upon a schedule whereby the appellant would stay at home with Emily until 1:00 p.m., at which time Emily would be cared for by a babysitter while the appellant would go to work. The appellee would then relieve the babysitter when he finished work, and would care for Emily until the appellant finished working at 9:30 p.m. The appellant further testified that she returned home during her work schedule to nurse Emily, and to have dinner with the family. The appellant also took a six-month leave of absence after the birth of her son Benjamin, and then followed the same schedule described above.

During the summer of 1989, while the appellant was a summer associate at Buchanan Ingersoll, she lived in Pittsburgh at her mother-in-law's home with Emily and Benjamin. The children were cared for by a babysitter while the appellant worked. The parties separated that summer, and the appellee visited with the children on weekends.

The appellant also testified that, when she and the children returned to Morgantown in August of 1989, the parties continued to live in the same home. The parties then agreed that the appellant would care for the children on Monday and Wednesday evenings, and the appellee would care for them on Tuesday and Thursday evenings.

The appellant also agreed to allow the appellee to have breakfast with the children on Monday and Wednesday mornings, and to take them to school on those days. The appellant testified that the parties alternated the weekends they would separately care for the children.

The appellee testified that he shared child care responsibilities from the time Emily was born in August of 1984. The appellee acknowledged that, during the appellant's maternity leave with each child, the appellant had almost exclusive child care responsibilities. The appellee stated that, prior to the separation, he prepared dinner for the family in the evenings while the appellant worked, and bathed and put the children to bed.

The appellee also testified that his child care and financial responsibilities dramatically increased when the appellant entered law school and ceased working at the Dominion Post. The appellee stated that he performed "virtually all of the grocery shopping," and that the appellant was responsible for all of the laundry. Although the appellant arranged for the children's schooling, the appellee testified that he was more involved with "[car pooling] and attending board meetings the first week of each of their schools." The appellee believed that he has much more time to spend with the children than the appellant because his schedule is much more flexible.

Following the hearings before the family law master, a recommended decision was entered in which the family law master concluded that, although either party would be fit to have custody of the children, custody should be awarded to the appellant.[2] The appellee appealed this decision to circuit court.

---

**1.** We pointed out, in *David M. v. Margaret M.*, 182 W.Va. at 68, 385 S.E.2d at 924, that "generally the question of which parent, if either, is the primary caretaker of minor children in a divorce proceeding is to be proven with lay testimony from the parties themselves and from teachers, relatives and neighbors."

**2.** The family law master explained at the final hearings:

I have set [sic] here and listened to both the mother and the father, I don't really like to call them plaintiff and defendant because its certainly obvious to me that this [sic] is no question that both parties have a great deal of love and affection for their children and that's not held against either party. There isn't any question that both parties are fit parties when it comes to their children. Mr. Brown has not been the average father that's in front of this court, I mean he has like I say done yomens [sic] duties. He's taken care of his children, he's bathed them, he's fed them, he's

Upon reviewing the recommended decision of the family law master, the circuit court was bound to follow the scope of judicial review set forth in *W.Va.Code,* 48A–4–10(c) [1990], which provides:

(c) The circuit court shall examine the recommended order of the master, along with the findings and conclusions of the master, and may enter the recommended order, may recommit the case, with instructions, for further hearing before the master or may, in its discretion, enter an order upon different terms, as the ends of justice may require. The circuit court shall not follow the recommendation, findings, and conclusions of a master found to be:

(1) Arbitrary, capricious, an abuse of discretion, or otherwise not in conformance with the law;

(2) Contrary to constitutional right, power, privilege, or immunity;

(3) In excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(4) Without observance of procedure required by law;

(5) Unsupported by substantial evidence; or

(6) Unwarranted by the facts.

In the case now before us, the circuit court concluded that the family law master's decision was "arbitrary and capricious," and awarded custody to the appellee. The circuit court appeared to base this decision on the fact that the appellant is working for a large law firm, and will rely on a babysitter to care for her children while she is at work.[3]

■ Pursuant to the provisions of *W.Va. Code,* 48A–4–10(c) [1990], the circuit court "may, in its discretion, enter an order upon different terms, *as the ends of justice may require."* (emphasis added). However, we believe that the circuit court abused its discretion in reversing the family law master's decision on the grounds that it was "arbitrary and capricious," and in ordering that the appellee be awarded custody. The family law master presided over two hearings, during which time he had the opportunity to hear the parties' testimony, and to observe their demeanor. The evidence indicated that the parties shared child-rearing responsibilities, and that both of the parents were fit to care for the children. Although both parents in this case took active roles in raising their children, there was substantial evidence to support the family law master's determination that the appellant was the primary caretaker, and that the children should remain in the appellant's custody. Furthermore, the record indicates that the childrens' maternal and paternal grandparents live in Pittsburgh where the appellant is employed, and has established a home. Moreover, the children have been in the care of their mother since birth, and since the separation of the parties.[4] The family law master's decision

cleaned, he's done all the things that a caring parent and a primary caretaker does. So has his wife, so has the mother done those things. The family law master went on to say: ˙
Mr. Brown's testimony was that he played with them and cared for them and that he bathed them is more or less an arrangement between the parties and this was his job as opposed to taking an active part.... I found that Mrs. Brown was more the chief he was an [I]ndian that did a tremendous amount of work and is a tremendous and dutiful father. But the directions in the way the things were set up is the primary caretaker if you are looking for a percentage on this I would doubt that I could, I would probably set it at 52 to 48% as close as you can get.

**3.** In its memorandum order, the circuit court made the following observation:
The Court recognizes the plaintiff's employment as one filled with much opportunity and

demand. However, lucrative careers often do not leave much room for flexibility. The Court respects the plaintiff's desire to devote after hours to the children, but recognizes the practical aspects of that expressed intention. The law profession is by no means comparable to any 9:00 a.m. to 5:00 p.m. job. The profession requires the availability and time flexibility that the plaintiff claims she will not sacrifice for the sake of the children. On the other hand, she plans to hire a live-in nanny to care for the children while she works. There seems to be an inconsistency with wanting to devote after hours at home with the children and hiring a full-time, live-in nanny.

**4.** After the separation, the appellee did live with the appellant and their children for a brief period from the time the appellant and her children returned from Pittsburgh at the end of the sum-

to award custody to the appellant was not "arbitrary and capricious," and "the ends of justice" did not require the circuit court to enter an order upon different terms. Thus, for the foregoing reasons, we shall reverse the circuit court on this issue.

## II

■ The next issue we must consider is whether the circuit court abused its discretion in denying the appellant's request for one-half of the appellee's pension, which is an amount of $3,761.83. The appellant avers that she is entitled to one-half of the pension the appellee accumulated during their ten-year marriage because she worked throughout the marriage, and performed homemaker and child care services. The appellee contends that, under the factors set forth in *W.Va.Code*, 48–2–32(c) [1984], the circuit court correctly · determined that the appellant was not entitled to one-half of the appellee's pension.

The circuit court, in the absence of a valid agreement, must assume that all marital property is to be divided equally. However, the circuit court may alter this distribution upon consideration of the factors enumerated by this Court in syllabus point 1 of *Somerville v. Somerville*, 179 W.Va. 386, 369 S.E.2d 459 (1988):

> In the absence of a valid agreement, the trial court in a divorce case shall presume that all marital property is to be divided equally between the parties, but may alter this distribution, without regard to fault, based on consideration of certain statutorily enumerated factors, including: (1) monetary contributions to marital property such as employment income, other earnings, and funds which were separate property; (2) nonmonetary contributions to marital property, such as homemaker services, child care services, labor performed without compensation, labor performed in the actual maintenance or improvement of tangible marital property, or labor performed in the management or investment of assets which are marital property; (3) the effect of the marriage on the income-earning

abilities of the parties, such as contributions by either party to the education or training of the other party, or foregoing by either party of employment or education; or (4) conduct by other party that lessened the value of the marital property. W.Va.Code, § 48–2–32(c) (1986).

If the circuit court determines to distribute any marital property in a manner other than equally, the circuit court must specifically state the reasons for such division as we pointed out in syllabus point 3 of *Somerville, supra:* "An order directing a division of marital property in any way other than equally must make specific reference to factors enumerated in § 48–2–32(c), and the facts in the record that support application of those factors."

■ In the case now before us, the circuit court observed that the appellee is a librarian who earns $25,000 a year, whereas the appellant, as an attorney, earns an annual salary of $57,000. The circuit court believed that the appellee had contributed to the appellant's legal education, both directly and indirectly, thereby substantially increasing her income-earning ability. Thus, as its reasons for denying the appellant one-half of the appellee's pension accumulated during the marriage, the circuit court stated that the appellee had: (1) made substantial contributions as a homemaker and provider of child care services; (2) foregone opportunities to increase his income-earning capacity in order to provide child care services; and (3) indirectly contributed to the appellant's law school education by caring for the children while she attended school.

Upon review of the record before us, we find evidence that the appellee made substantial contributions to the home by providing homemaker and child care services throughout the marriage. The evidence further indicates that the appellee's financial burden and child care responsibilities significantly increased when the appellant ceased working and attended law school. It appears from the record that the appellee contributed directly and indirectly to

mer of 1989 until the first hearing in October of    1989.

the appellant's legal education, which substantially increased the appellant's income-earning ability. Therefore, we conclude that the trial court did not abuse its discretion in determining that the family law master failed to consider the specific language of *W.Va.Code*, 48–2–32(c), and to allow the appellee's contributions to offset the appellant's interest in his pension.

Thus, for the reasons stated herein, we conclude that the order of the Circuit Court of Monongalia County entered on May 25, 1990, shall be affirmed, in part, and reversed, in part.

Affirmed, in part; reversed, in part.