505 S.E.2d 679

Gretchen Lewis CHAFIN, Plaintiff Below, Appellee,

v.

H. Truman CHAFIN, Defendant Below, Appellant.

Gretchen Lewis CHAFIN, Plaintiff Below, Appellant,

v.

H. Truman CHAFIN, Defendant Below, Appellee.

Nos. 24501, 24502.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 18, 1998.

Decided July 2, 1998.

Scott S. Segal, John F. Dascoli, The Segal Law Firm, Charleston, for Gretchen Lewis Chafin.

Carrie Coombs, Morgantown, Jeaneen Legato Whitley, Welch, Thomas W. Smith, Charleston, for H. Truman Chafin.

PER CURIAM: [1]

This action is before this Court upon the appeal of H. Truman Chafin and the appeal of Gretchen Lewis Chafin from the final order of the Circuit Court of Monongalia County, West Virginia, entered on December 5, 1996.[2] The two appeals have been consolidated for purposes of this opinion. At issue before this Court is the distribution of the parties' property following their divorce upon the ground of living separate and apart for one year. *W.Va.Code*, 48-2-4(a)(7) [1981].

This Court has before it the petitions for appeal, all matters of record and the briefs and argument of counsel. As reflected in the August 9, 1996, recommended order of the family law master, adopted by the circuit court, Mr. Chafin was directed to: (1) pay Ms. Lewis the sum of $232,233 in equitable distribution of the parties' property, with prejudgment interest thereon at the rate of 10% accruing from the date the divorce action was filed, (2) pay Lewis the sum of $54,000 as reimbursement for her contribution of separate funds to the parties' Williamson, West Virginia, house, which house was awarded to Chafin, (3) deliver to Lewis title to the parties' Charleston, West Virginia, house and (4) pay Lewis the sum of $127,413 for attorney fees and litigation expenses.

Upon a careful review of the record, and for the reasons stated below, this Court concludes that the adoption by the circuit court of the above recommended order was "protected by the parameters of sound discretion" *Parker v. Knowlton Construction Company*, 158 W.Va. 314, 329, 210 S.E.2d 918, 927 (1975), and should be affirmed with the exception of two matters. First, this Court is of the opinion that the circuit court committed error in awarding Ms. Lewis the house in Charleston. Second, this Court is of the opinion that the circuit court committed error in failing to afford Lewis an opportunity to present evidence concerning the date of the parties' separation. In the latter regard, the parties are both attorneys, and the separation date is important to a determination of marital property subject to equitable distribution concerning the parties' practice of law.

Accordingly, the final order is affirmed in part and reversed in part, and this action is remanded to the circuit court for further proceedings.

I.

FACTS AND PROCEDURAL BACKGROUND

To say the least, this action has a long and convoluted history. The parties have been in court substantially longer than they cohabited as husband and wife. The record consists of hundreds of pages of orders, pleadings, transcripts and exhibits, and the memoranda of law before this Court are lengthy.[3] For purposes of this opinion, a brief chronology of events is set forth below.

---

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley*, 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992).

2. The final order of December 5, 1996, restored to Gretchen Lewis Chafin her maiden name Lewis. Although this action is primarily known as *"Chafin v. Chafin,"* we will refer to Gretchen Lewis Chafin as "Ms. Lewis" or simply "Lewis."

3. This Court has carefully examined the record in this action. It should be noted, however, that the record was made up of documents from three counties and was delivered to us in three oversize boxes. The relatively small portion of the record, from Monongalia County, was paginated and indexed. The remainder was neither paginated nor indexed, although docket sheets were included and document numbers assigned. Moreover, the numerous exhibits, transcripts and audio cassettes included in the record were not clearly cataloged. The state of the record, therefore, added to the complexity of our task in reviewing the contentions of the parties.

Prior to their marriage in 1990, the parties lived in Williamson, in Mingo County, and practiced law there in an office previously established by Mr. Chafin. Moreover, Chafin was a Senator in the West Virginia Legislature and was, thus, required to spend substantial amounts of time in Charleston attending legislative sessions.

On April 29, 1989, Chafin purchased a house in Charleston and made a down payment thereon in the amount of $32,000. Chafin, however, was not listed as the grantee upon the deed. Rather, Ms. Lewis was named as the purchaser "as trustee" for Chafin. Nevertheless, Chafin was solely obligated upon the note and trust deed concerning the property. As discussed below, Lewis contends that the Charleston property was purchased in contemplation of marriage and that she contributed $10,000 of her own money to remodel the house. According to Ms. Lewis, therefore, the Charleston house constituted marital property. Chafin, however, asserts that the house was purchased merely to accommodate his duties in Charleston as a member of the Legislature. Specifically, Chafin asserts that he purchased the property through Lewis, as trustee, for political reasons, i.e., so that his residency in Mingo County as a member of the Legislature would not be questioned. In fact, for reasons unexplained in the record, Lewis later,

but prior to the parties' divorce, deeded her interest as trustee in the Charleston property to Chafin.

Subsequently, on October 11, 1990, the parties were married. They continued to practice law and began the construction of a house in Williamson upon a parcel of land purchased by Chafin prior to the marriage. Although the record indicates that Chafin was primarily responsible for the cost of construction, Lewis contributed $54,000 of her separate funds to complete the project. The parties cohabited in the Williamson house until their separation in 1993. The sole child of the marriage, a daughter, was born in 1992. Custody of the child was awarded to Ms. Lewis and is not an issue before this Court.

In late March 1993, Mr. Chafin was allegedly discovered by Ms. Lewis in an adulterous relationship. According to Chafin, the parties permanently separated at that time. However, on August 29, 1993, Chafin was allegedly again discovered by Ms. Lewis in an adulterous relationship. According to Lewis, August 29, 1993, was the true separation date of the parties.[4] In any event, after August 29, 1993, Lewis had moved to the Charleston house with her daughter. Chafin was in Williamson, and the parties never again cohabited or practiced law together.[5]

---

**4.** The petition for appeal filed by Ms. Lewis in this Court states:

Petitioner personally discovered Respondent's [Chafin's] adulterous relationship [in March 1993] at the marital home in Charleston, West Virginia. On August 29, 1993, after five months of individual and joint counseling the Petitioner once again personally discovered Respondent's adulterous relationship at the marital home in Williamson, West Virginia, whereupon Petitioner separated from Respondent.

**5.** As discussed in this opinion, the separation date of the parties is important to a determination of marital property with respect to the parties' practice of law.

In particular, the recommended order of family law master Gallagher determined that various portions of attorney fees from the efforts of the parties constituted marital property, based upon a separation date of March 31, 1993. The specific portion of a particular fee declared to be marital property was determined by calculating

the percentage of the work done by the parties prior to March 31, 1993. For example, one of the parties' cases was *King v. Mobile Drilling*, and the attorney fee therein was $25,625. Inasmuch as 80% of the legal work in the case was found to have resulted prior to the March separation date, $20,500 (80% of $25,625) was determined to be marital property. In another case, only 5% of the work resulted prior to the March 1993 separation date.

However, if the parties did not, in fact, separate until August 29, 1993, as Lewis contends, the portion of the attorney fees subject to declaration as marital property would substantially increase. Particularly at stake is the $1,000,000 attorney fee in the parties' *Mullins v. Pikeville Ready Mix* case.

Chafin responds by asserting that March 31, 1993, was the true separation date of the parties. Specifically, Chafin asserts that Lewis could have sought recovery for her post-March 1993 legal work upon a *quantum meruit* basis but failed to pursue that theory. According to Chafin, in view of the March 31, 1993, separation date of the parties, Lewis is not entitled to recover for post-

In October 1993, Lewis filed an action for divorce in the Circuit Court of Mingo County. Following the recusals of both the circuit court judge and the family law master in that county, however, the action was transferred to Putnam County.[6] While in Putnam County, proceedings were conducted by family law master Diana L. Johnson. Upon the resignation of Ms. Johnson as family law master, the action was transferred to Monongalia County. Following the subsequent, final evidentiary hearings in the action, family law master Robert F. Gallagher, on August 9, 1996, submitted the recommended order which was adopted by the Circuit Court of Monongalia County pursuant to the final order of December 5, 1996. The Hon. Robert C. Halbritter, appointed by this Court in 1993 to preside in this action in the circuit court, has served in that capacity in all three counties.

In November 1994, while the action was pending in Putnam County, Chafin filed a motion to bifurcate the complaint seeking a divorce from the issues concerning the distribution of the parties' property. The motion included the following comment: "Although the parties disagree as to the date of separation, for purposes of this motion the date of separation will be considered as August 29, 1993, when [Lewis] abandoned the marital home in Williamson, West Virginia, and moved to Charleston." However, during the hearing upon the motion conducted by family law master Johnson, Chafin testified that the parties separated in March 1993. He was not cross-examined upon that point. Recognizing during the hearing that the date of separation was in dispute, family law master Johnson, nevertheless, concluded that bifurcation should be granted and that an order divorcing the parties should be entered.

On December 28, 1994, an order was entered in the Circuit Court of Putnam County divorcing the parties upon the ground of living separate and apart for one year. *W.Va.Code*, 48-2-4(a)(7) [1981]. Included in the order was a statement that "[t]he parties last lived together and cohabited together as husband and wife in Mingo County, West Virginia, and were separated on or about March, 1993." The order also stated, however: (1) that "[s]ubstantial property issues have arisen between the parties with regard to equitable distribution of property," (2) that bifurcation would "not prejudice either party" and (3) that "all other unresolved issues, including but not limited to equitable distribution," were to be held in abeyance.[7]

After the action was transferred to Monongalia County, final evidentiary hearings were conducted by family law master Gallagher. Gallagher, however, refused to permit Lewis to present evidence that the parties had separated on August 29, 1993. Instead, family law master Gallagher relied upon the order of December 28, 1994, which indicated that March 31, 1993, was the true separation date.[8] Lewis proffered the record with evidence to the effect that the parties "lived

March 1993 legal work upon a marital property basis.

6. It should be noted that while this action was pending in Mingo County, Ms. Lewis sought relief in prohibition from an order temporarily awarding Chafin the use and occupancy of the Charleston house. Concluding that Lewis, rather than Chafin, was entitled to the temporary use and occupancy of that residence, this Court, in syllabus point 3 of *State ex rel. Chafin v. Halbritter*, 191 W.Va. 741, 448 S.E.2d 428 (1994), held: "Exclusive use of a marital home may be awarded to the custodial parent in a temporary relief order entered in a divorce proceeding as an incident to child custody regardless of the home's status as separate or marital property."

7. Prior to the entry of the December 28, 1994, order, Ms. Lewis filed exceptions to family law master Johnson's conclusions that bifurcation should be granted and that an order divorcing the parties should be entered. Although Lewis did not discuss therein the dispute concerning the date of separation, the exceptions alleged that there were no compelling reasons to grant the divorce "prior to resolving issues relating to . . . distribution of property." After the action was transferred to Monongalia County, Lewis, in September 1996, specifically challenged family law master Gallagher's acceptance of March 31, 1993, as the parties' separation date.

8. As the recommended order of family law master Gallagher stated:

(1) This matter is before the Court as a result of a bifurcation order entered on December 28, 1994.

(2) The parties, pursuant to that bifurcation order, last lived and cohabited as man and wife in March of 1993. This Court uses March 31, 1993, as the date of separation for the

together, traveled together, vacationed together and worked together through August 1993."

Following the evidentiary hearings, family law master Gallagher, on August 9, 1996, submitted a recommended order which was adopted by the circuit court in the final order of December 5, 1996. Pursuant to the final order, Mr. Chafin was directed to: (1) pay Ms. Lewis the sum of $232,233 in equitable distribution of the parties' property, with prejudgment interest thereon at the rate of 10% accruing from the date the divorce action was filed,[9] (2) pay Lewis the sum of $54,000 as reimbursement for her contribution of separate funds to the parties' Williamson house, which house was awarded to Chafin, (3) deliver to Lewis title to the parties' Charleston house and (4) pay Lewis the sum of $127,413 for attorney fees and litigation expenses.[10] In addition, the final order awarded custody of the parties' daughter to Lewis, and Mr. Chafin was directed to pay rehabilitative alimony and child support.

Although Ms. Lewis was awarded the Charleston house, the record indicates that, subsequent to the entry of the final order, Lewis and her daughter moved to the State of Massachusetts and converted the Charleston house to rental property.

## II.

### STANDARDS OF REVIEW

In syllabus point 1 of *Whiting v. Whiting,* 183 W.Va. 451, 396 S.E.2d 413 (1990), this Court set forth the following standard with regard to the equitable distribution of property in a divorce action:

Equitable distribution under *W.Va.Code,* 48–2–1, *et seq.,* is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets. The third step is to divide the marital estate between the parties in accordance with the principles contained in *W.Va. Code,* 48–2–32.

Syl. pt. 1, *Maxey v. Maxey,* 195 W.Va. 158, 464 S.E.2d 800 (1995); syl. pt. 1, *Signorelli v. Signorelli,* 189 W.Va. 710, 434 S.E.2d 382 (1993); *Kapfer v. Kapfer,* 187 W.Va. 396, 400, 419 S.E.2d 464, 468 (1992); *Kimble v. Kimble,* 186 W.Va. 147, 150, 411 S.E.2d 472, 475 (1991); syl. pt. 2, *Hamstead v. Hamstead,* 184 W.Va. 272, 400 S.E.2d 280 (1990).[11]

purposes of determining separate verses marital property.

9. As stated in n. 5, *supra,* the recommended order of family law master Gallagher determined that various portions of attorney fees from the parties' law practice constituted marital property, based upon a separation date of March 31, 1993. The specific portion of a particular fee declared to be marital property was determined by calculating the percentage of the work done in the case by the parties prior to March 31, 1993.

As the recommended order of the family law master indicated, the $232,233 in equitable distribution payable to Ms. Lewis included her marital share of the fees in question, based upon the above analysis concerning a separation date of March 31, 1993.

10. The award to Lewis of $127,413 for attorney fees and litigation expenses consisted of $109,-837 for professional services plus $17,576 for expenses. The $17,576 for expenses, which were found to be reasonable by family law master Gallagher, constituted a substantial reduction of the total expenses for which Lewis sought reimbursement. Mr. Chafin's attorney fees and litigation expenses were $115,454.

11. "Marital property" and "separate property" are defined in *W.Va.Code,* 48–2–1 [1992]. With regard to "marital property," *W.Va.Code,* 48–2–1(e) [1992], provides in part:

(e) "Marital property" means:

(1) All property and earnings acquired by either spouse during a marriage, including every valuable right and interest, corporeal or incorporeal, tangible or intangible, real or personal, regardless of the form of ownership [.]

(2) The amount of any increase in value in the separate property of either of the parties to a marriage, which increase results from (A) an expenditure of funds which are marital property, including an expenditure of such funds which reduces indebtedness against separate property, extinguishes liens, or otherwise increases the net value of separate property, or (B) work performed by either or both of the parties during the marriage.

With regard to "separate property," *W.Va. Code,* 48–2–1(f) [1992], provides:

(f) "Separate property" means:

(1) Property acquired by a person before marriage; or

(2) Property acquired by a person during marriage in exchange for separate property which was acquired before the marriage; or

(3) Property acquired by a person during marriage, but excluded from treatment as marital property by a valid agreement of the par-

According to *W.Va.Code*, 48–2–32 [1996], a circuit court is generally required to "divide the marital property of the parties equally between the parties." *See,* syl. pt. 1, *Somerville v. Somerville,* 179 W.Va. 386, 369 S.E.2d 459 (1988). In any event, however, findings of fact and conclusions of law are required concerning the distribution procedure. As *W.Va.Code,* 48–2–32(f) [1996], states:

> In any order which divides or transfers the title to any property, determines the ownership or value of any property, designates the specific property to which any party is entitled or grants any monetary award, the court shall set out in detail its findings of fact and conclusions of law, and the reasons for dividing the property in the manner adopted.

■ As this Court stated in syllabus point 2 of *Whiting, supra:*

> Unless the parties have made a joint stipulation or property settlement agreement, under Rule 52(a) of the West Virginia Rules of Civil Procedure the circuit court is required to make findings of fact and conclusions of law in its final order which reflect each step of the equitable distribution procedure. The same obligation is imposed upon a family law master under *W.Va.Code,* 48A–4–4(d).

Rule 52(a) provides that in actions "tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon [.]" Under Rule 52(a), findings of fact shall not be set aside unless clearly erroneous. *See also,* syl. pt. 2, *Signorelli, supra;* syl. pt. 3, *Wood v. Wood,* 184 W.Va. 744, 403 S.E.2d 761 (1991); syl. pt. 2, *Somerville, supra.*

Under our system of property distribution following a divorce, the required findings of fact and conclusions of law are ordinarily found in the recommended order of the family law master. A recommended order of a family law master is reviewable by a circuit court pursuant to statute, *W.Va.Code,* 48A–4–16 [1993], *W.Va.Code,* 48A–4–20 [1997], and pursuant to this Court's *Rules of Practice and Procedure for Family Law.*[12] The final order of a circuit court in such cases is, of course, reviewable by this Court. *Magaha v. Magaha,* 196 W.Va. 187, 190, 469 S.E.2d 123, 126 (1996); *Marilyn H. v. Roger Lee H.,* 193 W.Va. 201, 204, 455 S.E.2d 570, 573 (1995).

■ Specifically, as this Court observed in syllabus point 4 of *Burgess v. Porterfield,* 196 W.Va. 178, 469 S.E.2d 114 (1996): "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo.*" *See also, Phillips v. Fox,* 193 W.Va. 657, 661, 458 S.E.2d 327, 331 (1995). In *Phillips,* this Court cited syllabus point 1 of *Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995), which states:

> In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

Syl. pt. 1, *Williams v. Williams,* 202 W.Va. 41, 501 S.E.2d 477 (1998); syl. pt. 1, *Sum-*

---

ties entered into before or during the marriage; or

    (4) Property acquired by a party during marriage by gift, bequest, devise, descent or distribution; or

    (5) Property acquired by a party during a marriage but after the separation of the parties and before the granting of a divorce, annulment or decree of separate maintenance; or

    (6) Any increase in the value of separate property as defined in subdivision (1), (2), (3), (4) or (5) of this subsection which is due to inflation or to a change in market value result-

ing from conditions outside the control of the parties.

**12.** With regard to review by a circuit court, *W.Va.Code,* 48A–4–20(c) [1997], provides that a recommended order of a family law master shall not be followed where the findings and conclusions of the family law master are found to be: (1) arbitrary, capricious or an abuse of discretion, (2) contrary to a constitutional right, (3) in excess of statutory authority, (4) without observance of procedure, (5) unsupported by substantial evidence or (6) unwarranted by the facts.

*mers v. Summers*, 195 W.Va. 224, 465 S.E.2d 224 (1995); *Storrs v. Storrs*, 195 W.Va. 21, 23, 463 S.E.2d 853, 855 (1995); *Young v. Young*, 194 W.Va. 405, 408, 460 S.E.2d 651, 654 (1995).

## III.

### THE CHAFIN APPEAL

*The Equitable Distribution*

■ With regard to the issue of equitable distribution, the recommended order of family law master Gallagher reflected, as near as possible, a 50–50 division of the parties' marital property. In particular, after enumerating the various items of marital property and determining the value thereof, the family law master concluded that Mr. Chafin would be required to pay Lewis the sum of $232,233 in order to achieve an equal distribution.[13]

Chafin contends, however, that the distribution should not have been upon a 50–50 basis. Specifically, citing *W.Va.Code*, 48–2–1(f) [1992], which provides that "separate property" includes property acquired during a marriage, "but excluded from treatment as marital property by a valid agreement of the parties," *see* n. 11, *supra*, Chafin asserts that he and Lewis, in fact, had an oral agreement not to share in each other's assets during the marriage. According to Chafin, such an agreement was evidenced by the facts that the parties: (1) never commingled their funds into joint accounts,[14] (2) never acquired

property by joint title and (3) practiced law in the form of separate, sole proprietorships. Asserting that his contribution to the marital estate was significantly greater than the contribution of Lewis, Chafin contends that the circuit court committed error in distributing the property equally.

On the other hand, as evidenced by her deposition taken below, Lewis asserts that the marriage simply evolved without a specific agreement as to whether joint accounts or joint titles to property should be established.[15] However, Lewis asserts, the assets of the marriage were utilized by the parties for joint purposes, especially with regard to the parties' daughter. Moreover, Lewis emphasizes the fact that the record contains neither a formal prenuptial agreement nor a separation agreement concerning the parties' property. Therefore, according to Lewis, the 50–50 division of marital property was warranted.

The recommended order of family law master Gallagher states: "There was no basis presented to the Court to divide the marital property other than on an equal basis. The Master expressly finds that equitable distribution in this case means an equal distribution." As indicated above, according to *W.Va.Code*, 48–2–32 [1996], a circuit court is generally required to "divide the marital property of the parties equally between the parties."

---

**13.** The August 9, 1996, recommended order of family law master Gallagher, some twenty, single-spaced pages in length, devoted eleven pages to the discussion of equitable distribution between the parties. Specifically, the recommended order suggested that the total value of the parties' marital property was $723,031 and that each party was, therefore, entitled to $361,515.

The $723,031 consisted of the value of such items as motor vehicles, household goods, appliances and portions of attorney fees from the efforts of the parties while practicing law together in Williamson. *See*, n. 5, *supra*. The overwhelming measure of the $723,031, however, consisted of the investment accounts of the parties which exceeded, in total, $500,000 (with an actual growth rate in excess of 11% as of October 1993 when the action was filed).

Of the $361,515 family law master Gallagher concluded Lewis was entitled to receive as equitable distribution, Lewis had already received

$129,282. Thus, Lewis was entitled to receive the difference, i.e., $232,233, in order to equal $361,515. The $232,233 payable to Lewis, plus the $54,000 payable to Lewis as reimbursement for her contribution of separate funds to the Williamson house, equals the sum of $286,233, referred to in the recommended order.

**14.** As Mr. Chafin testified below: "We absolutely agreed that we would not commingle money and we never did, and you can look at every document in this world and you will see that's what we did."

**15.** During her deposition, Ms. Lewis stated:

We never really [sat] down and said, Okay, from this day forward everything is going to be joint and we are going to change all the titles, we just didn't, we just went along. I mean, life just evolved and one day followed another and there was never any discussion about that.

In *Somerville, supra*, this Court held that a circuit court abused its discretion by awarding a former wife less than 50% of the marital property, where the circuit court failed to articulate a reason for the unequal division. 179 W.Va. at 390, 369 S.E.2d at 463. In syllabus point 1 of *Somerville*, this Court stated:

In the absence of a valid agreement, the trial court in a divorce case shall presume that all marital property is to be divided equally between the parties, but may alter this distribution, without regard to fault, based on consideration of certain statutorily enumerated factors, including: (1) monetary contributions to marital property such as employment income, other earnings, and funds which were separate property; (2) non-monetary contributions to marital property, such as homemaker services, child care services, labor performed without compensation, labor performed in the actual maintenance or improvement of tangible marital property, or labor performed in the management or investment of assets which are marital property; (3) the effect of the marriage on the income-earning abilities of the parties, such as contributions by either party to the education or training of the other party, or foregoing by either party of employment or education; or (4) conduct by either party that lessened the value of marital property. *W.Va.Code*, 48–2–32(c) (1986).

Syl. pt. 3, *Pratt v. Pratt*, 197 W.Va. 102, 475 S.E.2d 102 (1996); syl. pt. 1, *Sellitti v. Sellitti*, 192 W.Va. 546, 453 S.E.2d 380 (1994); syl. pt. 5, *Wood, supra*; syl. pt. 2, *Brown v. Brown*, 184 W.Va. 627, 403 S.E.2d 29 (1991).

In this action, the recommended order of the family law master contained extensive findings upon the issue of equitable distribution, as required by *W.Va.Code*, 48–2–32(f) [1996], set forth above. The parties executed neither a written prenuptial agreement nor a separation agreement. *See*, syl. pt. 2, *Gant v. Gant*, 174 W.Va. 740, 329 S.E.2d 106 (1985). Moreover, as indicated above, the evidence of the parties was conflicting with regard to the existence of an oral agreement

concerning their property. Consequently, this Court is of the opinion that the division of the parties' marital property upon a 50–50 basis did not constitute an abuse of discretion.

*The 10% Interest*

In addition, however, Chafin contends that the circuit court committed error in awarding Lewis prejudgment interest upon her share of the equitable distribution. As stated above, the family law master and the circuit court awarded Lewis prejudgment interest at the rate of 10% accruing from the date the divorce action was filed.[16] As *W.Va. Code*, 56–6–31 [1981], concerning prejudgment interest, provides in part:

[I]f the judgment or decree, or any part thereof, is for special damages, as defined below, or for liquidated damages, the amount of such special or liquidated damages shall bear interest from the date the right to bring the same shall have accrued, as determined by the court. Special damages includes lost wages and income, medical expenses, damages to tangible personal property, and similar out-of-pocket expenditures, as determined by the court.

Chafin relies, *inter alia*, upon *Hamstead v. Hamstead*, 184 W.Va. 272, 400 S.E.2d 280 (1990), wherein this Court held that a wife, who was entitled to a distribution of ½ the net worth of her former husband's legal corporation and ½ the value of his pension plan following divorce, was not entitled to prejudgment interest upon those amounts. Specifically, this Court, in *Hamstead*, observed: "In the present case, the issues involve the distribution of property, and not the award of special or liquidated damages as contemplated by *W.Va.Code*, 56–6–31." 184 W.Va. at 277, 400 S.E.2d at 285. Thus, according to Mr. Chafin, inasmuch as the equitable distribution herein did not consist of special or liquidated assets, prejudgment interest should not have been permitted. Chafin further argues that marital property in this action subject to equitable distribution included various non-liquid items, such as the parties' motor vehicles.

---

16. In actuality, the family law master and circuit court awarded Lewis prejudgment interest from October 31, 1993, the end of the month next after the date the complaint for divorce was filed.

Lewis, on the other hand, points out: (1) that the overwhelming measure of the marital property consisted of investment accounts owned by the parties and (2) that those accounts had an actual growth rate in excess of 11% as of October 1993 when the action was filed. *See*, n. 13, *supra.* Thus, the non-liquid assets notwithstanding, Lewis asserts that, in fact, she should have been awarded the actual interest earned upon the marital property (in excess of 11%), rather than the 10% interest designated by the family law master and circuit court. In that regard, Lewis suggests that the actual interest earned was itself marital property and not in the nature of "prejudgment interest." In any event, Lewis contends that the award of 10% interest by the family law master and the circuit court did not constitute an abuse of discretion.

Upon review, this Court observes that the *Hamstead* case is not dispositive of the interest issue. Here, as the opinion of the circuit court indicated, Lewis was denied the use of the investment accounts from October 1993 to the date of judgment. The *Hamstead* case, however, did not involve an issue concerning investment accounts and did not involve an issue concerning the lack of use of funds. In the action before this Court, although the marital property did include non-liquid assets, the property consisted substantially of accounts earning interest at a rate which was subject to reasonable calculation, i.e., in excess of 11%.

In *Hardman Trucking, Inc. v. Poling Trucking Co.*, 176 W.Va. 575, 346 S.E.2d 551 (1986), this Court noted that losses "capable of being rendered certain by reasonable calculation" may be subject to prejudgment interest. 176 W.Va. at 580, 346 S.E.2d at 556. Moreover, as this Court held in syllabus point 1 of *Buckhannon–Upshur County Airport Authority v. R & R Coal Contracting, Inc.*, 186 W.Va. 583, 413 S.E.2d 404 (1991): "Prejudgment interest, according to West Virginia Code, 56–6–31 (1981) and the decisions of this Court interpreting that statute, is not a cost, but is a form of compensatory damages intended to make an injured plaintiff whole as far as loss of use of funds is concerned." Accordingly, in view of Lewis'

lack of access to the investment accounts during the pendency of this action before the circuit court, this Court is of the opinion that the award of prejudgment interest at the rate of 10% accruing from the date the divorce action was filed constituted a fair resolution of the interest controversy and was within the discretion of the family law master and the circuit court.

*The Williamson House*

■ With regard to the house in Williamson, the evidence is undisputed that Lewis spent $54,000 of her own funds to complete the construction thereof during the parties' marriage. By so doing, Chafin contends, Lewis converted the $54,000 into marital property. Thus, Chafin asserts that family law master Gallagher and the circuit court committed error in concluding that Lewis was entitled to reimbursement for that amount. As syllabus point 4 of *Whiting, supra,* cited by Mr. Chafin, holds:

> Where, during the course of the marriage, one spouse transfers title to his or her separate property into the joint names of both spouses, a presumption that the transferring spouse intended to make a gift of the property to the marital estate is consistent with the principles underlying our equitable distribution statute.

Syl. pt. 2, *Storrs, supra. See also*, syl. pt. 1, *Koontz v. Koontz*, 183 W.Va. 477, 396 S.E.2d 439 (1990), stating that this State's statutory scheme concerning divorce actions suggests a preference for characterizing the property of the parties as "marital property." Ms. Lewis contends, however, that the $54,000 was not converted into marital property and that, therefore, the reimbursement was warranted.

As indicated above, the Williamson house was located upon a parcel of land purchased by Chafin prior to the marriage. The parties were married in October 1990, began construction of the house thereafter and separated in 1993. They also had a house in Charleston. The Williamson property was titled in Mr. Chafin's name only, and he was awarded the property and house pursuant to the final order. Consequently, the family law master and the circuit court concluded that, as an "element of fairness," Lewis was entitled to the reimbursement, especially in

view of the fact that the $54,000 had not been "transferred to property titled jointly." Upon review, this Court is of the opinion that, under those circumstances, the presumption of gift mentioned in *Whiting, supra*, does not apply, since the separate property was not transferred into the joint names of both parties, as in *Whiting*. Accordingly, the $54,000 reimbursement ordered by the circuit court did not constitute an abuse of discretion.

### The Charleston House

■ By the same token, however, this Courts finds a problem with the determination of the family law master and the circuit court that Ms. Lewis should be awarded the house in Charleston. As indicated above, Chafin purchased the house on April 29, 1989, approximately 1 and ½ years prior to the parties' marriage. Mr. Chafin made a down payment on the property of $32,000 and was solely obligated upon the note and trust deed thereon. Chafin, however, was not listed as the grantee. Rather, Ms. Lewis was named as the purchaser "as trustee" for Chafin. In that regard, Chafin asserts that he purchased the Charleston property through Ms. Lewis, as trustee, so that his residency in Mingo County as a member of the Legislature would not be questioned. Thus, Mr. Chafin contends that the Charleston house was purchased merely to accommodate his legislative duties in Charleston and that the house was not marital property.

On the other hand, Lewis contends that the house in Charleston was correctly designated as marital property and properly awarded to her. In particular, Lewis notes that, although she purchased the house as trustee for Chafin, an application for insurance on the property she completed in 1989 indicated that Chafin was to be her husband, thus suggesting that the property was purchased in contemplation of marriage. Moreover, Lewis points out that she contributed $10,000 of her own money to remodel the house, again suggesting that the house was marital property.

In stating that the Charleston house was marital property, both Lewis and the court below relied upon the decision of this Court in *Hinerman v. Hinerman*, 194 W.Va. 256,

460 S.E.2d 71 (1995). In *Hinerman*, a couple searched for and located a residence "in contemplation of marriage." The residence was purchased on October 8, 1968, and the parties were married shortly thereafter on November 30, 1968. The property was purchased in the name of the husband, and his name remained solely upon the deed, even though he promised that he would add his wife's name to the title after the marriage. The parties used the house as their marital home, and the deed of trust payments were made from a joint checking account. Later, however, the unrefuted evidence was that the husband and wife did not add her name to the title because they feared the property could potentially be exposed to liability claims against the wife's dance school. In holding that the residence was marital property, rather than the separate property of the husband, this Court, in *Hinerman*, stated:

> The appellant and the appellee shopped for and located the property, and the appellee [husband] stated that he purchased the residence in contemplation of marriage. The appellant and the appellee were married soon after the October 8, 1968, deed. Moreover, the appellee, in his testimony before the family law master, indicated that he intended to add the appellant's name to the title after the date of marriage.

194 W.Va. at 260, 460 S.E.2d at 75.

Thus, *Hinerman* presented a rather unique set of circumstances, and stands somewhat alone on the landscape of marital property law.

Although subject to exceptions (as indicated in *Hinerman*), W.Va.Code, 48–2–1(f) [1992], provides that "separate property" includes "[p]roperty acquired by a person before marriage[.]" *See*, n. 11, *supra*. Here, in contrast to *Hinerman*, the house in Charleston was purchased 1 and ½ years prior to the parties' marriage. Except for the insurance application, the record reveals no evidence that the house was purchased in contemplation of marriage. After the marriage and until they separated, the parties lived and worked primarily in Williamson. Accordingly, the circumstances in this action

lack the compelling circumstances which, in *Hinerman*, resulted in the conclusion that the residence was marital property. Therefore, this Court is of the opinion that the circuit court committed error in awarding the Charleston house to Lewis.[17]

In so holding, however, we note that the family law master and the circuit court confirmed Lewis' assertion that she contributed $10,000 of her separate funds to remodel the Charleston house. Consistent with our holding concerning the Williamson house, therefore, this Court concludes that a reimbursement to Lewis for that contribution is warranted. Consequently, we hold that Chafin is entitled to the house in Charleston, subject to a $10,000 reimbursement to Lewis for her contribution of separate funds to that property.[18]

*The Attorney Fees and Litigation Expenses*

Finally, based upon the recommendation of family law master Gallagher, the circuit court ordered Mr. Chafin to pay Lewis the sum of $127,413 for attorney fees and litigation expenses. Specifically, the $127,413 consisted of $109,837 for professional services plus $17,576 for expenses. As indicated above, the $17,576 for expenses constituted a substantial reduction of the total expenses for which Lewis sought reimbursement. *See*, n. 10, *supra.* Mr. Chafin's attorney fees and litigation expenses were $115,454.

Contending that it was error to award Lewis attorney fees and litigation expenses, Chafin asserts, *inter alia*, that the family

law master and the circuit court: (1) overemphasized the factor of misconduct concerning Chafin's alleged adultery during the marriage, (2) failed to consider the financial burden placed upon him by the award of attorney fees and expenses and (3) failed to consider the delays in resolving the action caused by Lewis. Ms. Lewis, on the other hand, contends that the award was proper because: (1) fault or misconduct is a proper consideration in such awards, and, in this action, it was not the only factor considered by the family law master and the circuit court, (2) Chafin is in a better financial position than Lewis to bear the burden of the attorney fees and litigation expenses and (3) Chafin, rather that Lewis, contributed to the delays in this action.

The abuse of discretion standard applicable to a final equitable distribution order, set forth in syllabus point 1 of *Burnside, supra*, is specifically applicable to an award of attorney fees in a divorce action. In syllabus point 4 of *Banker v. Banker*, 196 W.Va. 535, 474 S.E.2d 465 (1996), this Court held:

In divorce actions, an award of attorney's fees rests initially within the sound discretion of the family law master and should not be disturbed on appeal absent an abuse of discretion. In determining whether to award attorney's fees, the family law master should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial re-

---

17. In *Pratt, supra*, a wife's father gave a $299,000 check to the wife and her husband for the purchase of a marital home. The check was deposited in a joint account, and the property purchased was jointly titled in the wife's and husband's names. In *Pratt*, this Court held that, the father's gift notwithstanding, the home was subject to equal distribution as marital property, since the gift "was unquestionably a gift to both parties." 197 W.Va. at 107, 475 S.E.2d at 107. Similarly, in *Whiting, supra*, a husband's alleged separate interest in real estate was rebuttably presumed to be a donation to the marital estate when he transferred joint title to himself and his wife during the marriage. In this action, however, the title to the Charleston property was never jointly titled in the names of Chafin and Lewis. Nor was the property acquired during the marriage or purchased from a joint account.

18. On April 20, 1998, Chafin filed a Motion for Immediate Relief with this Court in which he alleged that, while this appeal was pending, a trust deed foreclosure was scheduled concerning the Charleston property. In particular, Chafin alleged that Lewis, having been awarded the house by the circuit court, failed to keep current the payments required under the note and mortgage contract. This Court in May 1998, however, entered an order directing Chafin to assume the payments upon the property, thus precluding the foreclosure. Upon the remand of this action, the circuit court shall make any equitable adjustment necessary between the parties concerning the Charleston property and its award to Mr. Chafin and shall consider such matters as the receipt of rent, any payments made upon the note or for insurance by Lewis and the payment of expenses for the house during the period of this litigation.

sults obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party in making the divorce action necessary, and the reasonableness of the attorney's fee request.

Syl. pt. 12, *Pearson v. Pearson*, 200 W.Va. 139, 488 S.E.2d 414 (1997). *See, Alireza D. v. Kim Elaine W.*, 198 W.Va. 178, 185, 479 S.E.2d 688, 695 (1996), stating that "the relative degree of fault of a party in divorce related matters has been held by this Court to be a consideration in the award of attorney fees." *See also, W.Va.Code*, 48–2–13(a)(6) [1993], concerning attorney fees and court costs in divorce actions.

▮▮▮ Here, the August 9, 1996, recommended order of family law master Gallagher stated:

The Master considers the incomes of the parties. The Master considers the extensive obligations incurred by the parties in terms of obtaining attorney fees. This was a hotly contested matter. It extended over a lengthy period of time. The issues were complex. The Master considered the skill and reputation of the attorneys involved. The Master finds that the attorney fees of both parties are reasonable within the context of this action. The Master considers the dominant factors in this case, to warrant consideration of attorney fees, are the misconduct of the Defendant [Chafin] and the relative financial positions of the parties. * * * The Master finds that in this case it is fair and equitable for the Defendant to be required to pay the attorney fees and expenses of the Plaintiff [Lewis] and awards to the Plaintiff her attorney fees and expenses totaling $127,413.55.

▮▮▮ Clearly, the degree of fault resulting in divorce litigation may be considered under the principles set forth in *Banker, supra*, concerning an award of attorney fees and litigation expenses. Moreover, as indicated above, fault or misconduct was not the only factor considered in the award in this action. The fees and expenses herein were found to be reasonable by the family law master and the circuit court.[19] In fact, reasonableness is particularly evident in the case of the $17,576 awarded for expenses, wherein the amount allowed constituted a substantial reduction of the total expenses for which Lewis sought reimbursement. Moreover, as the circuit court indicated in a letter memorandum of opinion dated December 28, 1994, concerning Mr. Chafin's motion to bifurcate, both parties were somewhat responsible for the delays in resolving this action. Thus, upon all of the above, this Court is of the opinion that the award of attorney fees and litigation expenses to Lewis in the amount of $127,413 did not constitute an abuse of discretion.

## IV.

## THE LEWIS APPEAL

▮▮▮ Ms. Lewis also appeals from the December 5, 1996, order of the Circuit Court of Monongalia County. Essentially, Lewis contends that family law master Gallagher and the circuit court did not accurately classify the parties' property as "marital" or "separate" property because the family law master and the circuit court failed to allow a proper

---

**19.** In syllabus point 4 of *Aetna Casualty & Surety Co. v. Pitrolo*, 176 W.Va. 190, 342 S.E.2d 156 (1986), this Court held:

Where attorney fees are sought against a third party, the test of what should be considered a reasonable fee is determined not solely by the fee arrangement between the attorney and his client. The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Syl. pt. 1, *Landmark Baptist Church v. Brotherhood Mutual Insurance Co.*, 199 W.Va. 312, 484 S.E.2d 195 (1997); syl. pt. 3, *Statler v. Dodson*, 195 W.Va. 646, 466 S.E.2d 497 (1995); syl., *State ex rel. Shaw v. Board of Education of the County of Braxton*, 178 W.Va. 247, 358 S.E.2d 808 (1987).

adjudication of the parties' separation date. As stated above, Chafin contends that the parties separated on March 31, 1993, and Lewis contends that the parties separated on August 29, 1993. Specifically, Lewis asserts that if it is, in fact, determined that the parties did not separate until August 29, 1993, the portion of the attorney fees from the parties' law practice subject to declaration as marital property would substantially increase. Thus, the sole issue in the Lewis appeal is whether family law master Gallagher and the circuit court committed error in refusing to permit Lewis to present evidence that the parties separated on August 29, 1993. According to the proffer submitted by Lewis, the parties "lived together, traveled together, vacationed together and worked together through August 1993."

As indicated above, family law master Gallagher relied upon the bifurcation order of December 28, 1994, which indicated that March 31, 1993, was the parties' separation date. The $232,233 in equitable distribution payable to Lewis recommended by family law master Gallagher included her marital share of the attorney fees in question, based upon the March 1993 date. Specifically, as stated above, the portion of a particular fee declared to be marital property was determined by calculating the percentage of the work done in the case prior to March 31, 1993. For example, one of the parties' cases was *King v. Mobile Drilling*, and the attorney fee therein was $25,625. Inasmuch as 80% of the legal work in the case was found to have resulted from the efforts of the parties prior to the March 1993 separation date, $20,500 (80% of $25,625) was determined to be marital property. In another case, only 5% of the work resulted prior to the March 1993 separation date. According to Lewis, the percentages to be classified as marital property would substantially increase, based upon an August 29, 1993, separation date.[20]

Chafin asserts, however, that March 31, 1993, was the true separation date of the parties and that, accordingly, the marital property division ordered by family law master Gallagher and the circuit court was proper with regard to the attorney fee issue. According to Chafin, although Lewis may be entitled to recover for her post-March 1993 legal work on a *quantum meruit* basis, she is not entitled to recover for post-March 1993 legal work upon a marital property basis. *See*, n. 5, *supra. See also, Statler v. Dodson*, 195 W.Va. 646, 654, 466 S.E.2d 497, 505 (1995), and syl., *Clayton v. Martin*, 108 W.Va. 571, 151 S.E. 855 (1930), indicating that a departing attorney is entitled to the value of his or her services, rather than to the "whole contingent fee." Primarily, however, Chafin contends that Lewis waived the separation date issue by not contesting his testimony upon that point during the bifurcation hearing before family law master Diana L. Johnson and by not pursuing that issue until the matter was before family law master Gallagher. As indicated above, Chafin was not cross-examined after testifying before family law master Johnson that the par-

---

**20.** The petition for appeal filed by Lewis in this Court states:

"The cases settled between March, 1993 and August, 1993 include:

| Case | Attorney Fee | Fee Disbursed |
|------|--------------|---------------|
| King v. Mobile Drilling | $ 25,626 | 6/30/93 |
| Marcum v. Ward | $ 3,333 | 6/08/93 |
| Bryant v. Ward | $ 2,333 | 6/08/93 |
| Murphy v. I J. Hughes | $300,000 | 8/12/93 |
| Rhodes v. Mountaineer Gas | $ 15,000 | 5/17/93 |
| TOTAL | $346,292 | |

Petitioner [Lewis] is entitled to one-half of the attorney fees from March, 1993, through August 1993, which total $346,292, less reasonable expenses incurred by the law firm. Additionally, Petitioner is entitled to one-half of the attorney fees in [the] *Mullins* case."

Family law master Gallagher and the circuit court awarded Lewis a portion of all of the above attorney fees, including the fee in *Mullins*, based upon the parties' efforts prior to March 31, 1993.

Particularly at stake in this appeal, however, is the $1,000,000 attorney fee in the parties' *Mullins* case. In that case (*Mullins v. Pikeville Ready Mix*), it was determined that 10% of the efforts of the parties occurred prior to March 31, 1993. Thus, family law master Gallagher concluded that 10% of the fee or $100,000 constituted marital property. Lewis asserts, however, that the efforts of the parties in *Mullins* continued after March 1993 and prior to their separation in August 1993. If so, a greater portion of the *Mullins* fee would be classified as marital property.

ties separated in March 1993. The resulting bifurcation order of December 28, 1994, stated that the parties separated "on or about March, 1993."

In *Metzner v. Metzner,* 191 W.Va. 378, 446 S.E.2d 165 (1994), a husband and wife separated in March 1989 and were later divorced. During the marriage, the husband practiced law, and the wife worked as a secretary. With regard to the distribution of the parties' property, the wife asserted that she had a marital property interest in "any contingent fees that her husband may ultimately receive from his pending cases." Concluding that the wife's assertion had merit, this Court, in *Metzner,* indicated that the portion of the husband's fees attributable to work performed prior to the separation of the parties constituted marital property. Specifically, syllabus point 5 of *Metzner* holds:

> Contingent and other future earned fees which an attorney might receive as compensation for cases pending at the time of a divorce should be treated as marital property for purposes of equitable distribution. However, only that portion of the fee that represents compensation for work done during the marriage is actually "marital property" as defined by our statute. Because the ultimate value of a contingent fee case remains uncertain until the case is resolved, a court must retain continuing jurisdiction over the matter in order to determine how to effectuate an equitable distribution of this property.

Syl. pt. 2, *White v. Williamson,* 192 W.Va. 683, 453 S.E.2d 666 (1994). *See,* C.W. Davis, Annotation, *Divorce and Separation: Attorney's Contingent Fee Contracts as Marital Property Subject to Distribution,* 44 A.L.R.5th 671 (1996), citing *Metzner;* L.S. Tellier, Annotation, *Division of Fees or Compensation Between Cooperating Attorneys,* 73 A.L.R.2d 991 (1960). *See also,* syl. pt. 3, *Shaffer v. Charleston Area Medical Center, Inc.,* 199 W.Va. 428, 485 S.E.2d 12 (1997), stating that "[w]hen attorneys jointly under-

take to represent a client there is a rebuttable presumption that the attorneys are to equally share any recovery of attorney's fees."

Accordingly, as *Metzner* demonstrates, the separation date of the parties is critical to Lewis' attorney fee claims, in terms of marital property. Thus, Lewis seeks an opportunity to present evidence to the effect that the parties did not separate until August 29, 1993.[21] As indicated above, however, Chafin asserts that Lewis waived that opportunity. In resolving this controversy, an analysis of the bifurcation of this action is required.

The motion to bifurcate the divorce relief from the issues concerning the distribution of property was filed by Mr. Chafin in November 1994 pursuant to Rule 30 of this Court's *Rules of Practice and Procedure for Family Law.* That Rule states in part:

> The family law master and the circuit judge shall not order bifurcation in a divorce proceeding unless (a) there is a compelling reason to grant the divorce prior to resolving issues related to alimony, child support and distribution of property, (b) *neither party will be prejudiced by the bifurcation,* and (c) a temporary order has been entered granting alimony, child support, and any other relief. (emphasis added)

*See,* syl. pt. 1, *Holst v. MacQueen,* 184 W.Va. 620, 403 S.E.2d 22 (1991), stating that "[i]n a divorce proceeding bifurcation is proper when there is a compelling reason to separate the divorce issue from the related property issues, and neither party will be prejudiced by the bifurcation."

In this action, the ostensible clarity of the March 1993 separation date expressed in the December 28, 1994, bifurcation order is surrounded by equivocation. First, the testimony of Chafin notwithstanding, his motion to bifurcate stated that, "[a]lthough the parties disagree as to the date of separation, for purposes of this motion the date of separation will be considered as August 29, 1993,

21. It should be noted that pursuant to *W.Va. Code,* 48–2–1(g) [1992], "separation" is defined as "the separation of the parties next preceding the filing of an action under the provisions of this article, which separation continues, without the parties cohabiting or otherwise living together as husband and wife, and without interruption."

when [Lewis] abandoned the marital home in Williamson, West Virginia, and moved to Charleston." Second, a review of the transcript of the hearing upon the motion reveals that family law master Johnson acknowledged that the separation date was in dispute. Third, and most important, the December 28, 1994, order granting bifurcation, although stating that the parties separated "on or about March, 1993," also stated, however: (1) that "[s]ubstantial property issues have arisen between the parties with regard to equitable distribution of property," (2) that bifurcation would "not prejudice either party" and (3) that "all other unresolved issues, including but not limited to equitable distribution," were to be held in abeyance. Finally, even the final order of the Circuit Court of Monongalia County, entered on December 5, 1996, indicated that the December 28, 1994, bifurcation order remanded certain issues, including "issues of equitable distribution," for further proceedings. Clearly, therefore, the establishment of March 1993 as the true separation date of the parties, by way of the December 28, 1994, bifurcation order, is in doubt.

Nor do the circumstances herein indicate that Lewis waived her objection to the March 1993 date. As explained above, prior to the entry of the December 28, 1994, order, Lewis filed exceptions to family law master Johnson's conclusions that bifurcation should be granted and that an order divorcing the parties should be entered. Although Lewis did not discuss therein the dispute concerning the date of separation, the exceptions alleged that there were no compelling reasons to grant the divorce "prior to resolving issues relating to distribution of property." After the action was transferred to Monongalia County, Lewis, in September 1996, specifically challenged family law master Gallagher's acceptance of March 31, 1993, as the parties' separation date.

Here, the August 9, 1996, recommended order of the family law master contained no findings of fact with regard to the parties' separation date. Rather, the family law master relied upon the bifurcation order of December 28, 1994, which indicated that March 1993 was the separation date. However, as

explained above, the December 28, 1994, order was clearly prejudicial to Lewis' attorney fee claims concerning the parties' practice of law, in spite of the admonition of Rule 30 that bifurcation shall not be allowed if it would prejudice the parties. Moreover, the bifurcation order indicated that the equitable distribution issues would be resolved at a later date.

Therefore, this Court is of the opinion that the family law master and the circuit court committed error in refusing to permit Lewis to present evidence that the parties separated on August 29, 1993. Consequently, we remand this action to the circuit court for an evidentiary hearing limited to that determination and to its effect upon the attorney fee claims of Lewis under *Metzner.*

## V.

### SUMMARY

Upon all of the above, the final order of the Circuit Court of Monongalia County, entered on December 5, 1996, is affirmed in the Chafin appeal, with the exception that Chafin is determined to be entitled to the house in Charleston, subject to a reimbursement to Lewis in the amount of $10,000. *See* n. 18, *supra.* With regard to the Lewis appeal, we remand this action to the circuit court for an evidentiary hearing limited to a determination of the separation date of the parties and to the effect of that determination upon the attorney fee claims of Lewis under *Metzner.* This action is, therefore, remanded to the circuit court for proceedings consistent with this opinion.

Affirmed, in part; reversed, in part; and remanded.

DAVIS, C.J., MAYNARD and McCUSKEY, JJ., deeming themselves disqualified, did not participate in the decision in this case.

VICKERS and COOKMAN, Judges, sitting by temporary assignment.