438 S.E.2d 860

Rebecca White **BALL** (Formerly Wills), Plaintiff Below, Appellant,

v.

Mark E. **WILLS**, Defendant Below, Appellee.

No. 21608.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 21, 1993.

Decided Dec. 15, 1993.

---

James M. Cagle, Charleston, for appellant.

Mary Ellen Griffith, Bell & Griffith, Princeton, for appellee.

WORKMAN, Chief Justice:

This case is before the Court upon the appeal of Rebecca White Ball from the August 7, 1992, order of the Circuit Court of Mercer County, denying the Appellant's April 10, 1992, petition wherein the Appellant sought an increase of child support and medical support for the children, a redistribution of marital property to satisfy any support increase awarded, and an award of attorney's fees. The Appellant alleges the following assignments of error: 1) the trial court failed to consider the best interests of the children when determining child support; 2) the trial court failed to increase child support because the trial court not only failed to recognize that when the Appellee's income increased to a level which created an increased child support obligation of more than fifteen percent, the child support level presumptively increased, but the trial court also used only a four-month period of time to derive the Appellee's net income for the purposes of determining child support which contravenes the child support guidelines and the public policy of this state; 3) the trial court failed to consider an increase in the Appellee's medical care obligation for the children pursuant

to West Virginia Code § 48–2–15a (1992); 4) the trial court refused to consider West Virginia Code § 48–2–15(e) (1992) which allows the court an alternative means for modifying support by redistributing marital property; and, 5) the trial court refused to award the Appellant the requested amount of attorney's fees and costs. Based on a review of the record, including the parties' briefs, and all other matters submitted before this Court, we agree that the Appellant was entitled to an increase in both child support and medical care support for the children, as well as the amount of attorney's fees awarded. Accordingly, we reverse and remand for further proceedings.

By order dated July 10, 1990, the Appellant and the Appellee were granted a divorce based upon irreconcilable differences. A "Property Settlement and Agreement," (hereinafter referred to as agreement) dated June 29, 1990, and executed July 10, 1990, was merged into and made a part of the final order of the divorce. The purpose of the agreement was that the parties were "desirous of entering into an agreement under which they make a final settlement of the rights and obligations between themselves to the extent that they are able to do so under the law...." A substantial portion of the agreement pertained to the custody and care of the parties' two children, Jonathan Brubaker Wills and Caitlin McKenzie Wills, ages six and four respectively at the time the divorce was granted, including the following pertinent provisions:

3. Husband [the Appellee] shall pay unto wife [the Appellant] child support in the amount of One Thousand Two Hundred Fifty Dollars ($1,250.00) per month, payable in two equal monthly installments on the 1st and 15th of each month, beginning July 1 and 15, 1990. The parties hereto acknowledge that said child support is in excess of that provided by the applicable formula in West Virginia given their present earnings, but they have negotiated this amount which they believe to be in the best interest of their children.

. . . .

15. Wife agrees to maintain hospital and medical insurance coverage for the infant children, and husband shall be responsible for all uninsured medical, hospital, dental, orthodontic, optical and pharmaceutical expenses incurred on behalf of said children up to and including August 31, 1990. Beginning September 1, 1990, the parties shall equally divide any of said uninsured medical and hospitalization expenses.

On May 11, 1992, the trial court considered evidence on the financial circumstances of the parties relevant to the Appellant's April 10, 1992, petition for modification. That evidence revealed that the parties' combined gross income in 1989, the year utilized to determine the amount of child support for the purposes of the agreement, was $89,000. Of that amount, the Appellant contributed $25,000 as a college professor at Concord College and the Appellee made $59,000 from his law practice.

The record establishes that in 1990, the Appellant filed a separate income tax return showing gross earnings in the amount of $25,661, $9,823 of which was from her teaching, $14,500 of which was alimony, which included the lump-sum alimony payment of $10,000 under the terms of the agreement, and $1,050 of which was from a consulting job as well as interest and dividend income. The Appellee's federal and state tax returns for the same year show that his gross earnings were $504,443. The dramatic increase in the Appellee's income was due to the receipt of an attorney's fee in excess of $430,-000 from a personal injury. While the fee was not received until after the parties' divorce was finalized, the Appellee's law firm took the case from which the large attorney's fee was collected in 1988, prior to the divorce.

In October of 1991, the Appellant remarried. She and her new husband filed joint federal and state tax returns reflecting gross income of approximately $55,600. Of that amount, the Appellant contributed $29,000 and her husband was responsible for 26,600. The Appellee also remarried in July of 1991. He and his new wife filed joint state and federal tax returns that reflected a gross combined income in excess of $183,000. Of that sum the Appellee's new wife earned approximately $35,000 as a nurse, while the

Appellee earned approximately $148,000 from his law practice.

For 1992, the Appellant testified that her take-home pay per month was $1,473.75. The trial court added to that amount $491.66 which the Appellant had withheld for investment purposes which increased her take-home pay to $1,965.41. The Appellee testified that for his year-to-date earnings through the first week of May 1992, he had withdrawn $21,975 from the firm and he had earned an additional $1,000 in investment income. These figures reflect a gross monthly income of $5,743.75. The trial court used these monthly income amounts reflecting the parties' income for 1992 in determining child support pursuant to the child support guidelines.[1] The trial court also found that the Appellant paid twenty dollars a month to carry medical and hospital insurance protection for the children.

## CHILD SUPPORT

■ The first issue before the Court focuses upon the failure of the trial court to modify child support. This issue arises out of the following conclusion made by the trial court:

> The evidence was that the two children of the parties were normal 6 and 4 year olds (sic), having all they wanted or needed and requiring nothing special in the way of expenditures. Accordingly, the court finds and holds that plaintiff-respondent failed to establish on any ground that the child support agreement set out in the property settlement and agreement should be modified, changed, or increased in any way.

The Appellant argues that the trial court erred in failing to utilize a period of time which fairly represented the Appellee's actual income vicissitudes. The Appellant maintains that had the trial court utilized a more

sufficiently lengthy period of time in ascertaining the Appellee's fluctuating income, the evidence would have established that the existing child support payments were less than eighty-five percent of what the payments would be under the child support guidelines utilizing the increased income. When this occurs, the Appellant argues that pursuant to West Virginia Code § 48–2–15(e) (1992),[2] the child support payment presumptively increases. The Appellant maintains that the trial court's use of only the Appellee's 1992 year-to-date income, which encompassed the first four months and one week in 1992, instead of utilizing a sufficiently lengthy period of time to present a realistic picture of his income for the purposes of calculating child support contravenes not only the child support guidelines, but also the public policy of this state as it is not in the best interests of the children. In contrast, the Appellee asserts that the circuit court followed the child support guidelines in determining child support and found that the Appellant did not meet her burden of proving a substantial change of circumstances sufficient to warrant a modification of support. Additionally, the Appellee asserts that the circuit court's determination of the appropriate period of time to use in determining income for the purpose of calculating child support was within the court's sound discretion and does not contravene the public policy of this state.

■ West Virginia Code § 48A–2–8(b) (1992)[3] which mandates the establishment of the child support guidelines provides that

> [i]n order to ensure that children properly share in their parents' resources, regardless of family structure, the guidelines shall be structured so as to provide that after a consideration of respective parental incomes, that child support will be related, to the extent practicable, to the level of living which such children would enjoy if

1. *See* W.Va.C.S.R. §§ 78–16–1 to –20 (1988).

2. West Virginia Code § 48–2–15(e) provides, in pertinent part,

 [t]hat an order providing for child support payments may be revised or altered for the reason, inter alia, that the existing order provides for child support payments in an amount that is less than eighty five percent or more than one hundred fifteen percent of the

amount that would be required to be paid under the child support guidelines.... West Virginia Code § 48–2–15(e) was amended in 1993, but the amendments do not affect the outcome of this case.

3. West Virginia Code § 48A–2–8 was amended in 1993. Those amendments do not affect the outcome of this case.

they were living in a household with both parents present.

This statutory provision also states that the director of the child advocate office in promulgating the guidelines, "shall be directed by the following legislative findings: ... (2) That parental expenditures on children represent a relatively constant percentage of family consumption as family consumption increases, *so that as family incomes increases, the family's level of consumption increases, and the children should share in and benefit from this increase* [.]" W.Va.Code § 48A–2–8(f)(2) (emphasis added). It is clear from the above-mentioned provisions that increases in income were meant to be taken into consideration when determining child support pursuant to the child support guidelines under the rationale that children have a right to benefit and share from such increases in income.[4]

A problem arises, however, in ascertaining what period of time a trial court must utilize in determining a party's income where the annual income is not a static amount, but involves significant increases or decreases. Income is defined in volume 6 of the West Virginia Code of State Regulations § 78–16–3.1.1. and includes "[c]ommissions, earnings, salaries, wages, and other income due or to be due in the future to a support obligor from his or her employer and successor employers...." Additionally, Rule 11(b)(1) and (2) of the Rules of Practice and Procedure for Family Law (effective October 1, 1993)[5] (hereinafter referred to as Rules) now require the parties in a divorce action to disclose the following financial information for the purposes of determining child support and/or alimony:

(1) A copy of the party's most recent wage or salary stub stating the gross pay, deductions for taxes and other items itemized, and net pay, both for a normal pay period and for year-to-date earnings; [and] (2) A copy of the party's income tax returns for the two years immediately preceding the hearing date and Forms W–2 for those years and for any year for which tax returns have not yet been filed....

Thus, the Rules make it clear that a court should review income for some substantial period of time. In establishing a proper of amount of child support, a court should not limit itself to a review of only the support obligor's year-to-date income, but should also review a support obligor's income for at least the past two years before making a child support determination. By analogy, the same framework should apply in the context of modifications of child support.

 Indeed, in conjunction with any determination of child support pursuant to the child support guidelines set forth in West Virginia Code of State Regulations §§ 78–16–1 to –20, where a support obligor's income is not a fixed amount, but tends to fluctuate significantly from year to year, sole reliance on the support obligor's year-to-date income is insufficient for the purposes of determining child support, either initially or in the context of a modification. In cases involving fluctuating income, the court must require full financial disclosure and review financial information including, but not limited to, income tax returns and year-to-date income for

---

4. There is no real cap on the dollar amount of child support which may be awarded. However, in *Bettinger v. Bettinger*, 183 W.Va. 528, 396 S.E.2d 709 (1990), this Court held in syllabus points 11 and 12 that:

6 W.Va.C.S.R. § 78–16–2.7.2 of the child support guidelines allow a family law master or circuit court, in the exercise of sound discretion, to apply less than the full SOLA [standard of living adjustment] percentages for child support if one support obligor has a discretionary income above $6,000 a month or both support obligors have a combined discretionary income of $8,000 per month.

A decision not to follow the SOLA percentages must be undertaken in light of the legislative preference in W.Va.Code, 48–2–8(b)

(1989), that child support should be keyed to 'the level of living such children would enjoy if they were living in a household with both parents present.' If the family law master or circuit judge determines that SOLA percentages under 6 W.Va.C.S.R. § 78–16–2.7.2 should not be used, an explanation must be given.

*Id.* at 531, 396 S.E.2d at 712.

5. This Court recognizes that the Rules of Practice and Procedure for Family Law were not in effect at the time this case was before the lower court; however, we find the rules helpful in determining the time frame which courts should utilize in determining the parties' income for the purposes of a child support award.

a lengthy enough period of time so that significant past or anticipated changes in income are incorporated when calculating the support obligor's income.

■ As an ancillary matter, the Appellant argues that the trial court improperly decided "that the defendant's-petitioner's income for four (4) months and one (1) week is a proper basis on which to calculate the child support guidelines to determine if the present support is eighty-five percent (85%) or less than that amount arrived at by applying the Melson formula." While West Virginia Code § 48–2–15(e) does not presumptively increase a child support award where the amount of child support paid is less than eighty-five percent of that which would be required to be paid under the child support guidelines, the statutory provision does provide that when this fact exists, "an order providing for child support may be revised or altered." W.Va.Code § 48–2–15(e); *accord* Syl.Pt. 1, *Gardner v. Gardner*, 184 W.Va. 260, 400 S.E.2d 268 (1990). The practical effect of that statutory provision is to clarify that when child support is less than eighty-five percent of the formula amount, such fact constitutes a change of circumstances on which to base a modification. The child support guidelines also provide that generally the court shall order payment of child support as stipulated in the terms of an agreement between the parties,

> unless the court finds: ... [t]hat the agreement, viewed in the context of the children having a right to share in their natural parents' level of living, and considering the best interests of the children, is so inequitable as to defeat the purposes and principles of section eight, article two, chapter forty-eight-a of the code of West Virginia, and such agreement was inequitable at the time the same was ratified and approved by a court or master; or ... [i]f a separation agreement provides for amounts of child support which would not

fall within the guidelines for child support awards promulgated by this legislative rule....

6 W.Va.C.S.R. §§ 78–16–18.2., –18.2.3. and –18.3. Accordingly, when the Appellee's fluctuations in income are taken into consideration by the trial court, if the existing child support award paid by the Appellee is demonstrated to be less than eighty-five percent of that which would be required to be paid under the child support guidelines then the circuit court shall alter the child support award unless compelling reasons not to do so are enunciated.

■ In the present case, the Appellee's income increased from approximately $59,000 in 1989 to $504,443 in 1990 and then decreased to $148,000 in 1991. The lower court erred in failing to consider the Appellee's income over a lengthy enough period of time so that these significant fluctuations were included in his income for child support purposes. Additionally, it is apparent from the record that had the trial court considered the Appellee's increased income, the trial court would have ascertained that the Appellee's existing child support payments pursuant to the Agreement were less than eighty-five percent of what the payments would be under the child support guidelines. While the trial court found that the children were in good health and that all their physical needs were met, it failed to consider not only what was in the children's best interests, but the directive contained in West Virginia Code § 48A–2–8 which clearly indicates that the children should enjoy the level of living they would experience if both their parents were together.[6] There is no question that the children would have enjoyed the Appellee's increase in income had their parents not divorced. Upon remand, the trial court should increase the existing child support payments [7] and, pursuant to West Virginia

---

6. A court has the discretion in appropriate cases, where all the children's day-to-day needs are being sufficiently met such that, with due consideration of their ages, they are living as well as their parents, to direct that a portion of a child support increase be invested for future educational or other needs of the children.

7. The retroactivity of the support award should be in accord with this Court's decision in *Wood v. Wood*, 190 W.Va. 445, 438 S.E.2d 788 (1993).

Code § 48–2–15(e)[8] may consider redistributing the marital property as an alternative means for modifying the support if the circumstances so warrant.

## MEDICAL SUPPORT

█ The next issue involves the application of West Virginia Code § 48–2–15a (1992)[9]. That statute, prior to the 1993 amendments, provided, in pertinent part:

　(b) In every action to establish or modify an order which requires the payment of child support, the court shall ascertain the ability of each parent to provide medical care for the children of the parties. The court shall order one or more of the following:

　. . . .

　(3) Based upon the respective ability of the parents to pay, the court may order either parent or both parents to be liable for reasonable and necessary medical care for a child. The court shall specify the proportion of the medical care for which each party shall be responsible.

　(4) If insurance coverage is available, the court shall also determine the amount of the annual deductible on insurance coverage which is attributable to the children and designate the proportion of the deductible which each party shall pay.

W.Va.Code § 48–2–15a(b)(3) and (4). Under the existing agreement between the Appellant and the Appellee, the Appellant carries the children under her medical insurance plan and the parties divide evenly the uninsured medical costs. The Appellant argues that based upon the Appellee's increase in income, he should pay all uninsured medical costs.

█ The record reflects that the while the trial court recognized that the Appellant pays $20 per month to provide her children with medical coverage, the trial court failed to consider the Appellant's request that the Appellee pay all the uninsured medical costs. West Virginia Code § 48–2–15a(b) mandates that the trial court shall ascertain each parent's ability to provide medical care for their children each time an order requiring child support payments is either established or modified. *See Smith v. Smith*, 187 W.Va. 645, 650, 420 S.E.2d 916, 921 (1992) ("the Legislature has authorized trial courts in divorce actions to provide for medical coverage of the minor children"). This failure on the part of the trial court to even consider the parties' respective abilities to pay the uninsured medical costs of their children is in direct contradiction of the statute. *See* W.Va.Code § 48–2–15a(b). The Appellant already pays $20.00 to provide medical insurance coverage for the children. Given the fact that the Appellee's yearly income is far greater than the Appellant's, the Appellee has the greater ability to pay the uninsured medical costs. Therefore, the trial court erred not only in failing to ascertain the parties' abilities to pay medical coverage, but also in failing to require the Appellee to assume the payment of the medical costs not covered by the medical insurance, based upon his enhanced ability to pay.

## ATTORNEY'S FEES AND COSTS

█ The final issue before the Court is whether the trial court erred in failing to award the Appellant the full amount of requested attorney's fees and costs. The Appellant argues that the trial court abused its discretion when it arbitrarily selected hourly fees and reduced the time spent on the litigation. The following ruling utilized by the trial court was based upon the criteria enunciated by this Court in syllabus point 4 of

---

**8.** West Virginia Code § 48–2–15(e) provides, in pertinent part, that

　In granting relief under this subsection [modifying an existing support order], the court may, where other means are not conveniently available, alter any prior order of the court with respect to the distribution of marital property, if such property is still held by the parties, and if necessary to give effect to a modification of

alimony, child support or child custody or necessary to avoid an inequitable or unjust result which would be caused by the manner in which the modification will affect the prior distribution of marital property.

**9.** West Virginia Code § 48–2–15a was amended in 1993. Those amendments do not affect the outcome of this case.

*Aetna Casualty & Surety Co. v. Pitrolo,* 176 W.Va. 190, 342 S.E.2d 156 (1986): [10]

5. In applying the above test considerations to the case at bar, it is noted:

(a) Mr. Cagle [the Appellant's attorney] charged $125 per hour. Ms. Griffith [the Appellee's attorney] charged $60 per hour.

(b) Mr. Cagle's billing does not reflect any travel time. Mr. Cagle practices in Charleston and this case was heard in Princeton.

(c) The case did not involve novel or difficult legal issues. Case law, statutes and legislative rules to a large extent governed the issues involved.

(d) The customary fee should be governed by the reasonable fees charged in Princeton rather than those charged in Charleston. This is so even though Mr. Cagle practices in Charleston and has the higher expenses. This contract was with his client, not Mr. Wills who he is now asking to pay. The reasonable Princeton fee rate is not $60 per hour as charged. by Ms. Griffith. Her fee is most reasonable and I suspect involves professional courtesy considerations.

The lower court then fixed the amount of $90 per hour as a reasonable and fair fee, rather than the requested $125 per hour. The court allowed the Appellant's attorney nine hours in travel time for the five hearings which occurred, and affixed an hourly rate of $32 per hour for the travel time incurred as well as turnpike fees of $5 per trip. Further, the court noted that the proceedings in this case, including the pleadings and discovery, were limited in nature and that a total of five witnesses were used in both hearings with exhibits limited to primarily tax returns and earnings statements. The court also specifically noted that the delay [11] which the parties encountered in this case before the family law master and the circuit court was not the parties' fault. Therefore, the court refused to charge the costs [12] incurred from these delays against the Appellee as his sole expense. Thus, the court assigned "a reasonable number of hours for the proceedings had herein to be forty," which did not include the nine hours allotted as travel time. Based on these findings, the court found the Appellant liable for sixty-five percent of the trial attorney's fee amount and costs or $2,628.[13]

■ West Virginia Code § 48–2–13(a)(4) (1992) [14] provides for a court to order either party in a divorce action to pay "attorney's

---

10. Syllabus point 4 of *Aetna Casualty & Surety Co.* provides:

Where attorney's fees are sought against a third party, the test of what should be considered a reasonable fee is determined not solely by the fee arrangement between the attorney and his client. The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

176 W.Va. at 191–92, 342 S.E.2d at 157. These factors have been utilized for determining the reasonableness of attorney's fees in domestic cases. *See Bettinger,* 183 W.Va. at 543, 396 S.E.2d 709 at 724.

11. According to the parties' briefs, the Appellant was served on July 11, 1991, with a motion by the Appellee to increase visitation. A hearing on this matter was scheduled for July 23, 1991. The Appellant, however, had to request a continuance before the family law master because she found it difficult to find an attorney to represent her. A full hearing before the family law master was rescheduled for October 2, 1991, however, on that date Family Law Master Wiley recused himself. Subsequently, on November 6, 1991, Judge Frazier was recused based upon the Appellant's motion because the judge apparently knew both the parties personally. The Honorable C. Berkley Lilly was then appointed by this Court to preside over this case.

12. The trial court failed to specify the actual dollar amount attributed as being costs incurred from the delays.

13. The Appellant requested $8,102.50 in fees and $1,014.25 in costs.

14. West Virginia Code § 48–2–13 was amended in 1993; however, those amendments do not affect the outcome of this case.

fees and court costs *reasonably* necessary to enable the other party to prosecute or defend the action in the trial court." (emphasis added). We have interpreted West Virginia Code § 48–2–13(a)(4) as follows: "The purpose of W.Va.Code, 48–2–13(a)(4) (1986), is to enable a spouse who does not have financial resources to obtain reimbursement for costs and attorney's fees during the course of the litigation." Syl.Pt. 14, *Bettinger v. Bettinger,* 183 W.Va. 528, 396 S.E.2d 709 (1990).

In syllabus point 2 of *Cummings v. Cummings,* 170 W.Va. 712, 296 S.E.2d 542 (1982) this Court held

'In a suit for divorce, the trial [court] ... is vested with a wide discretion in determining the amount of ... court costs and counsel fees; and the trial [court's] ... determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that he has abused his discretion.' Syllabus point 3, *Bond v. Bond,* 144 W.Va. 478, 109 S.E.2d 16 (1959).

*Accord Somerville v. Somerville,* 179 W.Va. 386, 391, 369 S.E.2d 459, 464 (1988). In the present case, the trial court failed to follow the mandate of West Virginia Code § 48–2–13(a)(4) as well as this Court's decision in *Bettinger* in the ruling concerning the attorney's fees and costs, thereby abusing its discretion. The evidence indicates that the Appellant clearly does not have the financial resources to pay such fees and costs. It is also significant to note that the Appellant should not be penalized because she had to resort to retaining counsel from outside Mercer County to represent her. Attorneys from outside Mercer County may very well charge more than the going rate for that county. The issue is whether the amount charged by the Appellant's counsel was reasonable, and we believe it was. Even the judge's order reflects that the Appellant used a Charleston attorney, and although the record is silent on the reason, it in all likelihood related to the fact that the Appellee was a practicing attorney Mercer County. He obviously enjoyed professional good-will in the community. Both judges, as well as the family law master, recused themselves and the court found that the Appellee's lawyer gave him a reduced hourly rate for her legal services as a professional courtesy. On remand, the trial court may consider an award of additional attorney's fees and costs incurred by the Appellant in prosecuting this appeal. *See* W.Va.Code § 48–2–13(a)(4).

Based on the foregoing, the decision of the Circuit Court of Mercer County is hereby and reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.