# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

Heather H.,
Petitioner

**FILED**
**June 17, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

vs) No. 19-0058 (Kanawha County 12-D-714)

W. Shane H.,
Respondent

## MEMORANDUM DECISION

Petitioner Heather H.[1] ("Wife") appeals an order of the circuit court in this divorce proceeding. She contends that the circuit court erred by 1) vacating the alimony award entered by the family court, and 2) including Respondent W. Shane H.'s ("Husband") student loan in the marital estate.[2]

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the parties have agreed that the decisional process would not be significantly aided by oral argument.[3] This case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure. After review, the decision of the circuit court is affirmed, in part, reversed, in part, and remanded to the circuit court with directions to enter an order remanding the case to the family court for further proceedings consistent with our ruling herein.

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015).

[2] Heather H. is represented by Lyne Ranson, Esq., and Tim Carrico, Esq. W. Shane H. is represented by Mark A. Swartz, Esq.

[3] This matter was originally scheduled for oral argument on April 15, 2020, but was continued generally due to an Administrative Order entered by the Court declaring a judicial emergency due to the COVID-19 virus. The parties were given the opportunity, and agreed, to submit their case on briefs without oral argument.

1

The parties were married in 1993. Husband is an orthodontist. Wife worked with Husband from 2002 to 2012. According to the family court, "[b]oth parties admit that [Wife] worked hard to establish [Husband] as a known and referable orthodontist, as well as working alongside him at his office in various positions over the years as needed." They have two minor children who were born in 2009 and 2012. The custodial arrangement regarding these children is not at issue in this appeal.

Husband initiated this divorce proceeding in April of 2012. Several temporary and final orders were entered by the family court between 2012 and 2017. Per an agreed temporary order entered on July 3, 2012, Husband was ordered to pay Wife $11,500 per month. The parties appeared for several hearings to present evidence in the family court regarding equitable distribution, alimony, and child support. Wife testified that she was requesting $14,648.92 per month in child support, and $5,000 per month in temporary alimony. Wife stated that she was only requesting $5,000 per month in alimony until her children graduated from high school.

The family court issued its final order regarding equitable distribution, alimony, and child support on November 13, 2017. It ordered Husband to pay Wife $15,000 per month in permanent alimony, and $12,711.52 per month in child support.[4] Regarding the alimony award, the family court considered the factors set forth in W. Va. Code § 48-6-301(b) (2001). That section[5] provides that the following shall be considered in awarding spousal support:

> (1) The length of time the parties were married;
> (2) The period of time during the marriage when the parties actually lived together as husband and wife;
> (3) The present employment income and other recurring earnings of each party from any source;
> (4) The income-earning abilities of each of the parties, based upon such factors as educational background, training, employment skills, work experience, length of absence from the job market and custodial responsibilities for children;
> (5) The distribution of marital property to be made under the terms of a separation agreement or by the court under the provisions of article seven of this chapter, insofar as the distribution affects or will affect the earnings of the parties and their ability to pay or their need to receive spousal support,

---

[4] The order directed Wife to "invest the sum of $2,500 per child ($5,000) per month to an educational investment plan of her choice."

[5] This statute was amended in 2018. Our review of the statute is of the version that was in place in 2017 when the family court entered its final order.

2

child support or separate maintenance: Provided, That for the purposes of determining a spouse's ability to pay spousal support, the court may not consider the income generated by property allocated to the payor spouse in connection with the division of marital property unless the court makes specific findings that a failure to consider income from the allocated property would result in substantial inequity;

(6) The ages and the physical, mental and emotional condition of each party;

(7) The educational qualifications of each party;

(8) Whether each party has foregone or postponed economic, education or employment opportunities during the course of the marriage;

(9) The standard of living established during the marriage;

(10) The likelihood that the party seeking spousal support, child support or separate maintenance can substantially increase his or her income-earning abilities within a reasonable time by acquiring additional education or training;

(11) Any financial or other contribution made by either party to the education, training, vocational skills, career or earning capacity of the other party;

(12) The anticipated expense of obtaining the education and training described in subdivision (10) above;

(13) The costs of educating minor children;

(14) The costs of providing health care for each of the parties and their minor children;

(15) The tax consequences to each party;

(16) The extent to which it would be inappropriate for a party, because said party will be the custodian of a minor child or children, to seek employment outside the home;

(17) The financial need of each party;

(18) The legal obligations of each party to support himself or herself and to support any other person;

(19) Costs and care associated with a minor or adult child's physical or mental disabilities; and

(20) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable grant of spousal support, child support or separate maintenance.

While the family court set forth findings under each factor, we find its analysis of factors three, nine, seventeen, and twenty to be particularly relevant to the instant appeal. Pursuant to the third factor, the family court found that Husband's "(36)

3

month average gross income is $113,545.00 per month or $1,362,540.00 per year," while Wife "is not employed at this time but does have a child of tender years in her care and custody." Under the ninth factor, the family court determined that "the parties' standard of living was comfortable." The family court's finding under the seventeenth factor, the financial need of each party, was that Wife

> testified . . . that her reasonable monthly expenses are $8,241.57 per month. [Wife] does have a monthly need for alimony, as the Court finds that the child support is to be used for the benefit of the minor children. Furthermore, she will need an amount beyond the alimony award to cover the taxes on her alimony so that she can meet her monthly living expenses.

Finally, the family court's finding under the last factor was that Husband's "alleged infidelity as well as his admitted contact with another woman that was not his wife during the parties' marriage contributed to the dissolution of the marriage."[6]

> Based on its analysis of these factors, the family court's final order provides

> [t]his Court notes that the parties lead a comfortable lifestyle during the marriage which afforded many luxuries. . . . In addition, the Court finds that [H]usband's income would adequately support the maintenance of the current lifestyle enjoyed by each party.

> The Court after due consideration of the foregoing alimony factors FINDS and ORDERS [Husband] to pay [Wife] a permanent spousal support in the amount of $15,000.00 per month effective November 1, 2017. Alimony shall cease upon

---

[6] Additionally, regarding the fourth factor, the family court determined that Husband "is 45 years old and is trained as an orthodontist" and "operates Shane H[.], Inc., and three real estate holding companies," while Wife "is 45 years old and . . . unemployed at this time." It found that Wife has "a degree in Marketing" and "worked in that profession and supported the parties while [Husband] obtained his dental schooling." Further, Wife "worked for Shane H[.], Inc.[,] as an office manager and administrator" for approximately eleven years, during which time she "ensure[d] that the Husband's business flourished and grew." Wife was previously employed by "the U.S. Postal Service, Mylan Pharmaceuticals, and Mid Atlantic Capitol Group," although she "has been out of her chosen career for several years." The family court found that Wife "suffers from no disabilities that prevent her from working."

the death of [Husband], death of [Wife], or the remarriage of [Wife].

The family court's final order also found that Husband's outstanding student loan debt, $133,985, was his "separate debt not subject to equitable distribution." It was undisputed that this debt was incurred during the marriage. The family court's order did not include an explanation or cite any law in support of its ruling that this debt was not subject to equitable distribution.

Following entry of the family court's order, Husband filed two motions for reconsideration, which the family court denied. Husband then filed a petition for appeal with the circuit court. On appeal to the circuit court, Husband asserted that the family court erred in awarding permanent alimony to Wife in the amount of $15,000 per month, when she only requested $5,000 per month for a limited duration—until the children graduated from high school. Further, Husband disputed the family court's finding that his alleged infidelity contributed to the dissolution of the marriage. Husband also asserted that the family court erred in ruling that his student loan debt was a separate debt instead of a marital debt.

After holding a hearing, the circuit court entered a final order on December 3, 2018. The circuit court found that the family court abused its discretion "by finding that Wife had a financial need for alimony." The circuit court's order provides that

> the family court clearly erred and abused its discretion by awarding Wife permanent spousal support in the amount of $15,000 per month considering Wife's total financial needs of $8,241 and the amount of child support alone she receives ($12,711.52); as well as the fact she did not request permanent spousal support. Wife's financial needs will be met by her child support award alone which the parties agreed at trial would have been $14,648.92.
>
> The court considers the permanent spousal support award of $15,000 to be a windfall to Wife and constitutes an abuse of discretion and error by the family court.
>
> Based on the foregoing . . . Wife's spousal support award is REVERSED and VACATED, and Wife is hereby DENIED spousal support. Child support previously calculated without alimony will be $14,648.92.

Additionally, the circuit court found that the family court abused its discretion by awarding permanent alimony to Wife on the basis that Husband's "alleged

5

infidelity as well as his admitted contact with another woman that was not his wife during the parties' marriage contributed to the dissolution of the parties' marriage." The circuit court determined that "there was no evidence presented at trial by [Wife] that [Husband] committed adultery during the parties' marriage that contributed to the dissolution of the parties' marriage."[7]

The circuit court also ruled that the family court abused its discretion by ruling that Husband's student loan debt was his separate debt which was excluded from the martial estate. The circuit court noted that this debt was incurred during the marriage, and that "[e]ven Wife in her proposed final order to the family court allocated this debt equally to the parties by including it as a marital debt[.]" The circuit court's order stated that the family court "did not provide any explanation for disregarding the agreement of the parties and assigning the . . . debt" to Husband. Therefore, the circuit court ruled that Husband's student loan debt "is a marital liability subject to equitable distribution."

After entry of the circuit court's order, Wife filed the present appeal.

Our standard of review is set forth in syllabus point one of *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004):

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Also, with regard to alimony, this Court has held: "Questions relating to alimony . . . are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syl., in part, *Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977). With these standards in mind, we turn to the parties' arguments.

Wife raises two assignments of error. First, she argues that the circuit court erred "when it reduced [the] alimony [award] from $15,000 a month to $0 a month."

---

[7] The circuit court noted that the family court's order granting the parties' divorce was based on irreconcilable differences, given that Wife did not allege adultery or mental cruelty as grounds for divorce. Therefore, the circuit court found that it was an abuse of discretion for the family court to consider alleged infidelity in determining the alimony award.

Second, Wife asserts that the circuit court erred by including Husband's student loan debt in the marital estate.[8] We address each argument in turn.

Wife argues that the circuit court improperly substituted its judgment for that of the family court when it reduced the alimony award from $15,000 per month to $0. According to Wife, the family court "worked on this case for years," considered the relevant factors under W. Va. Code § 48-6-301(b), and properly entered an alimony award. Wife notes that the family court looked at all of the factors under W. Va. Code § 48-6-301(b) in arriving at its "reasoned decision" to award her $15,000 per month in permanent alimony.

Conversely, Husband asserts that the circuit court correctly determined that the family court's alimony award was more than Wife's stated need or request. Husband notes that the family court found that Wife's testimony established that her monthly living expenses were $8,241.57. Further, Wife testified that she was only requesting an alimony award of $5,000 per month until her children graduated high school. She never requested a permanent alimony award, nor did she request $15,000 per month. Additionally, Husband asserts that a permanent alimony is not warranted because Wife is forty-five years old, has an advanced college degree, and a substantial work history. Finally, Husband argues that the circuit court correctly ruled that the family court erred in finding that his "alleged infidelity" contributed to the dissolution of the marriage. He argues that the parties agreed that he did not commit adultery.[9]

After review, we agree with the circuit court's ruling that "the permanent [alimony] award of $15,000 [per month] . . . to Wife . . . constitutes an abuse of discretion and error by the family court." The circuit court's ruling is supported by a number of factors. First, Wife never requested a permanent alimony award, she only requested alimony until her children graduated from high school. Additionally, Wife testified that she is able to work, in good health, has a college degree, and a lengthy work history including employment with Mylan Pharmaceuticals and as an office administrator with Husband's orthodontics practice. Next, Wife only requested $5,000 per month in alimony—she never requested an alimony award of $15,000 per month. We find no rationale in the family court's order explaining why it entered a *permanent* alimony award three times greater than Wife's *temporary* alimony request. Further, the undisputed

---

[8] Neither party contests the circuit court's ruling that Wife receive $14,648.92 per month in child support.

[9] In fact, Husband asserts that the family court erred by not considering Wife's misconduct under the final factor in W. Va. Code § 48-6-301(b). He states that Wife diverted $80,000 in marital funds to her mother during the marriage, yet the family court gave this misconduct no consideration under the final factor.

7

evidence established that Wife's monthly living expenses were $8,241.57. Per the family court's final order, Wife would receive $15,000 per month in permanent alimony, plus $12,711 in child support. This combined monthly amount was far greater than Wife requested, and we cannot discern how the family court arrived at this ruling. Therefore, we agree with the circuit court's conclusion that the family court erred by awarding Wife $15,000 per month in permanent alimony.[10]

While we agree with the circuit court's conclusion that the family court's permanent alimony award of $15,000 per month was erroneous, we are not convinced that the circuit court's ruling denying Wife any alimony award was proper. The circuit court's ruling relies heavily on the fact that Wife's monthly financial need, determined to be $8,241, will be met by the child support award. While this finding is correct, and while Wife's monthly financial need is an important factor to consider, it must be considered along with all of the factors contained in W. Va. Code § 48-6-301(b). Therefore, we find it necessary to remand this case to the circuit court with directions for it to remand this matter to the family court for consideration of whether an alimony award is proper based on all of the factors contained in W. Va. Code § 48-6-301(b), in conjunction with our ruling herein that the permanent alimony award of $15,000 per month was erroneous.

Wife's second assignment of error is that the circuit court erred by including Husband's student loan debt in the marital estate. Wife's brief to this Court devotes less than one page to this issue. She concedes that she could not find any case law on this issue. Wife asserts that there was an agreement between the parties that the student loan was a separate debt that Husband was responsible for, but she does not include any citation to the record to support this argument. Further, even assuming there was no agreement, Wife asserts that the issue is "whether it seems more reasonable than not . . . to require [Wife] to assume the going forward cost of [Husband's] student loans."

Husband argues that the circuit court did not err in ruling that the student loan debt should be included in the marital estate. According to Husband, it was undisputed that this debt was incurred during the marriage. In fact, Husband notes that Wife's proposed final order submitted to the family court included the student loan debt in the martial estate. Additionally, Husband cites *Slone v. Slone*, No. 12-0620, 2013 WL 2157755 (W. Va. May 17, 2013) (memorandum decision), in which this Court affirmed a

---

[10] The circuit court also concluded that the family court's consideration of Husband's "alleged infidelity" under the final factor of W. Va. Code § 48-6-301(b) was improper and "contrary to Wife's testimony." In support of this conclusion, the circuit court noted that a bifurcated divorce order was granted on the ground of irreconcilable differences. Neither adultery nor mental cruelty were alleged by Wife as grounds for divorce. Per our review of the appendix record, we find no evidentiary support for the family court's conclusion that Husband's "alleged infidelity" contributed to the dissolution of the marriage.

circuit court's ruling affirming a family court's determination in a divorce proceeding that a student loan debt acquired during the marriage should be divided equally between the parties.

After review, we agree with the circuit court's ruling that "the family court erred and abused its discretion by determining Husband's student loan debt [was] his separate liability when the parties agreed that it was a marital debt." As noted by the circuit court, there is no dispute that this debt was acquired during the marriage. Further, both parties agreed that this was a marital debt and included it as such in their proposed final orders submitted to the family court. The family court's order did not provide any explanation for its ruling assigning this debt solely to Husband. Finally, we agree with Husband that this Court's ruling in *Slone* supports the circuit court's ruling that the student loan debt should be included in the marital estate.

Based on all of the foregoing, we affirm the circuit court's ruling that the student loan debt be included in the marital estate. Additionally, we affirm the circuit court's ruling that the family court's permanent alimony award of $15,000 per month was an abuse of discretion. However, we reverse the circuit court's ruling that Wife was not entitled to any alimony award. We remand this case to the circuit court with directions for it to remand this matter to the family court for consideration of whether an alimony award is proper based on all of the factors contained in W. Va. Code § 48-6-301(b), in conjunction with our ruling herein that the permanent alimony award of $15,000 per month was erroneous. Finally, we reiterate that neither party has contested the circuit court's ruling that Wife receive $14,648.92 per month in child support. Therefore, that ruling is affirmed.

Affirmed, in part, Reversed, in part, and Remanded With Directions.

ISSUED: June 17, 2020

CONCURRED IN BY:
Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

CONCURRING, IN PART, AND DISSENTING, IN PART:
Justice Margaret L. Workman

Workman, J., concurring in part and dissenting in part:

I concur with the majority's conclusion that the circuit court erred in reducing petitioner wife's alimony from $15,000 a month to zero. The family court order addressed each of the statutory factors for making a decision on the proper amount of alimony. If the circuit court found such analysis inadequate, then it should have been remanded it back to the family court for further analysis or explanation, rather than determining as a matter of law that the wife was not entitled to one cent of alimony. Therefore, I dissent to the majority's conclusion that the family court's alimony award lacked sufficient basis in the record.

In the instant case, the lower courts were presented with a long-term marriage, during which the wife and respondent husband agreed that the wife would forego her career for the purposes of raising their children and lending critical support and development to respondent's orthodontic practice. That the wife's efforts were tangible and invaluable is well-demonstrated by the financial success which the husband now enjoys in his professional career. The husband is a successful orthodontist whose gross annual income is approximately $1.4 million. In addition, he owns a real estate holding company providing him approximately $120,000 annually. The wife worked to put her husband through dental school. Later, she gave up the opportunity for career advancement in her own field to work in the husband's office and to promote the success of his business, while also giving birth to their two children and caring for them when they came home from school. When this almost twenty-year marriage ended, the husband was still bringing in $1.4 million plus and the wife was unemployed. The wife had been absent from her chosen field for nearly eighteen years, having dedicated all of her time and efforts to his practice and their family. All of these facts were reviewed in detail in the section of the family court's order wherein it made its award of spousal support.

The circuit court seems to have improperly justified the reduction of the wife's alimony to zero on several bases. Perhaps because the wife received a fairly large amount in equitable distribution of marital assets, the circuit court seemed to indicate that she did not need alimony.[11] The wife received a substantial award of equitable distribution of marital property, despite the fact that it was valued substantially less than seems

---

[11] On appeal to the circuit court, however, there were multiple issues relative to equitable distribution which were decided substantially in the husband's favor, thereby reducing the wife's effective equitable distribution. The allocation of credit for a 2011 tax refund to husband was reduced significantly from $179,887 to $50,453 and his student loan was redesignated as marital property, instead of his separate debt. In addition, the family court utilized the husband's valuation of the orthodontic practice, settled on the husband's suggested date of valuation of the holding companies, and obtained a favorable allocation of debt regarding certain personal property.

10

reasonable due to the wife's expert's failure to comply with *May v. May*, 214 W. Va. 394, 589 S.E.2d 536 (2003) in her evaluations. However, alimony and equitable distribution are conceptually and practically different. The husband was not expected to pay his daily living costs from his portion of the equitable distribution. In fact, according to the record, the husband's orthodontic business will continue to bring in around $1.4 million a year, as well as about $120,000 from his real estate holdings. But with the zero-alimony award, the wife would have to live off her equitable distribution.

Next, the circuit court apparently felt that the wife's support should come at least partially from funds awarded for child support. The circuit court's order plainly states that the wife failed to demonstrate that she had a financial need "over and above child support amount calculated." However, it is clear that the child support award must be considered and used exclusively for the benefit of the minor children and not as contribution to the wife's individual expenses. *See Lang v. Iams,* 201 W. Va. 24, 27, 491 S.E.2d 24, 27 (1997) ("[T]he duty of a parent to support a child is a basic duty owed by the parent to the child[.]); *Lambert v. Miller*, 178 W. Va. 224, 230, 358 S.E.2d 785, 791 (1987) (observing that child support awards correspond with needs of child)*; accord Wolfburg v. Wolfburg*, 606 A.2d 48, 52 (Conn. 1992) ("Alimony is payment for support of a former spouse and child support is payment for support of a minor child. . . . [T]he two must be kept separate when the court determines the appropriate awards as to each[.]").

In this case, any excess over and above the children's necessary, daily living expenses is plainly in recognition of the enhanced lifestyle the children enjoyed, which must be maintained, rather than attributable as *de facto* spousal support: "[C]hildren should enjoy the level of living they would experience if both their parents were together." *Ball v. Wills*, 190 W. Va. 517, 523, 438 S.E.2d 860, 866 (1993). In fact, "[a] court has the discretion in appropriate cases, where all the children's day-to-day needs are being sufficiently met such that, with due consideration of their ages, *they are living as well as their parents*, to direct that a portion of a child support increase be invested for future educational or other needs of the children." *Id*. at 524 n.6, 438 S.E.2d at 867 n.6 (emphasis added). In recognition of this balancing act, the family court in this case directed that some portion of the child support award be invested for future educational purposes.[12]

_____

[12] Although use of the child support amounts for the wife's expenses is improper, it is noteworthy that the circuit court failed to appreciate that $5,000.00 of the child support award would be set aside for the children's education, thereby reducing the amount available for the daily needs of the children. Despite referencing this set-aside in its order, the circuit court later characterized this $5,000 as "an additional" sum to be paid by the husband and credited it to the wife as potential monies if they are unused: "Presumably if the funds are not used by the minor children for education they will revert to Wife as tax free moneys." In any event, consideration of the child support funds or any future hypothetically unused monies is inadequate to ensure a proper award of present spousal support.

In addition to conflating the child support funds with the wife's living expenses, the circuit court considered that the wife requested neither permanent alimony nor the exact amount awarded by the family court, but rather only $5,000 a month until the children graduated from high school. Despite this request, the wife testified that her reasonable monthly expenses were $8,241.57 per month.[13] In light of that testimony, the family court held that she did have a monthly need for alimony, as well as an amount beyond the alimony award to cover the taxes on her alimony so that she can meet her monthly living. The family court further noted the "comfortable lifestyle" the parties enjoyed during the marriage and that the husband's income would adequately maintain that lifestyle for each. By that determination as well as the other statutory factors, it then increased the $5,000 to $15,000 and placed no time limitation on the award, as was within its discretion in view of the exhaustive description of the contributions and sacrifices the wife made while the husband was developing his successful practice. The family court was careful to note that the wife "went above and beyond what a reasonable wife would do to assist the [husband] in growing his orthodontic practice[.]"

These errors notwithstanding, I do agree that the evidence of infidelity in the record was inadequate to *alone* justify the award. Because the family court's order made only vague intimations of alleged infidelity, the circuit court correctly held that formal allegations of infidelity had neither been made nor sufficiently proven. However, to be clear, the family court's reference to the husband's "contact with another woman who was not [respondent's] wife" which led to the dissolution of the marriage was permissible under West Virginia Code § 48-6-301(b)(20), which allows consideration of "[a]ny other factors as the court determines necessary or appropriate to consider in order to arrive at a fair and equitable grant of spousal support and separate maintenance." Further, West Virginia Code § 48-8-104 requires that

> [i]n determining whether spousal support is to be awarded, or in determining the amount of spousal support, if any, to be awarded, the court *shall* consider and compare the fault or misconduct of either or both of the parties and the effect of the fault or misconduct as a contributing factor to the deterioration of the marital relationship.

---

[13] Given the wife's stated monthly expenses and the parties' prior standard of living, counsel's request for less than her stated expenses was inadequate in the context of these facts. *See* W. Va. Code § 48-6-301(a) (providing that where the parties "have executed an agreement which . . . the court finds . . . not to be fair and reasonable[,] . . . the court shall proceed to resolve the issues outstanding between the parties."

(emphasis added). The husband emphasizes that the divorce was obtained on grounds of irreconcilable differences, however, it is abundantly obvious that the specter of marital misconduct was present in the proceedings such that the family court felt confident in discussing it in its spousal support order.[14]

On a larger scale, this case merely underscores the need for more reliable and consistent spousal support awards. Although the statutory factors set forth by the Legislature appear comprehensive in terms of relevant considerations, the subjective consideration of these factors by statewide family court judges yields little parity. "Broad judicial discretion contributes to the unpredictability of spousal support outcomes, and unpredictability presents significant difficulties for nearly everyone involved in a divorce case, including the divorcing spouses, lawyers, judges, and state legislatures." Gunn, Gregory N., *Spousal Support Awards in Utah: An Alternative Approach*, 13 J. L. & Fam. Stud. 379, 380 (2011). The most obvious means by which to ensure greater uniformity in spousal support awards is by establishment of an equitable formula. Use of a formula would provide across-the-board benefits. As one commentator has observed:

> A formulaic approach to spousal support would lower the legal costs of a divorce by allowing the parties to accurately estimate the court's determination of spousal support prior to ever entering a courtroom. The parties could thereby avoid the attorney fees associated with that issue. A formulaic approach would help attorneys provide clients with clear legal advice about what a court is likely to award in spousal support. The courts would also benefit by avoiding the nearly impossible task of accurately weighing the facts of each case and fairly arriving at a spousal support award. Overall, spousal support would finally be based on a more definite standard (the formulaic statute) that would facilitate a perception of fairness across cases.

*Id*. at 381. As Chief Justice in 2011, I created a committee to study whether alimony guidelines could bring greater parity and coherence to the decisions of the family courts around the state. That committee never presented a formal report to this Court. However, it has recently come to my attention that the committee did submit a draft report to the administrative office which was, for reasons unknown, never provided to the Court. The draft of that set of proposals shows that a resounding majority of practitioners had experienced inconsistency in alimony awards in cases with similar facts and agreed that

---

[14] The brief testimony in the hearing transcript regarding this "contact" with another woman certainly suggests that it was previously discussed in greater detail, providing context for the abbreviated discussion.

non-binding guidelines would aid in advising their clients and avoiding litigation. A majority of family court judges likewise were in favor of non-binding guidelines.[15]

I urge the continued consideration[16] of the efficacy of the establishment of a formula which would all but eliminate the need for speculating on the basis of spousal support awards. These would only be guidelines, not mandatory dictates, and the legislature's directive on the factors to be considered would have continued viability, as well as keeping the discretion of the family courts intact.

For the foregoing reasons, I respectfully concur in part and dissent in part to the majority's decision.

---

[15] The guidelines proposed in the draft report included the use of computer software calibrated to West Virginia's statutory criteria, utilizing the input of any "objective and quantifiable components" and then permitting upward or downward adjustment based on the particular facts of a case. In all instances, however, the recommended guidelines would leave the ultimate issue of whether a spousal support award should be ordered at all in the sound discretion of the family court.

[16] In 2017, Senate Bill 243 proposed an amendment to West Virginia Code § 48-6-301, which would permit the court to utilize a worksheet to calculate alimony in lieu of the statutory factors. The Committee Substitute which passed the Senate made use of the worksheet mandatory, but permitted deviation from the calculated amount for "good cause shown," as specifically included in written findings. The bill was sent to the House of Delegates and referred to the Judiciary Committee, where no further action was taken.